## IN THE DISTRICT COURT OF OKLAHOMA COUNTY
## STATE OF OKLAHOMA

| | |
|---|---|
| KIMIESHA HILL, JASON GARNETT, AND KIARA MCCORKLE, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | |
| v. | |
| TOWN OF VALLEY BROOK, VALLEY BROOK MUNICIPAL COURT, LEWIS NIEMAN, Mayor of Valley Brook, in his official capacity; STEPHEN HAYNES, Municipal Judge, in his official and individual capacity; MICHAEL STAMP, Chief of Valley Brook Police Department, in his official capacity; VALLEY BROOK POLICE DEPARTMENT, | |
| Defendants. | |

**CJ- 2021-67** ⬛ 🔲

Case No. _____

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

JAN - 7 2021

RICK WARREN
COURT CLERK
42_____

---

## CLASS ACTION COMPLAINT

Plaintiffs Kimiesha Hill, Jason Garnett, and Kiara McCorkle, on behalf of themselves and a class of all those similarly situated, allege and state as follows:

## INTRODUCTION

1.     This is an action for damages, declaratory, and injunctive relief arising out of Defendants' violations of the United States and Oklahoma Constitutions, the law of Oklahoma and the Rules of the Oklahoma Court of Criminal Appeals.  The Defendants' unlawful and unconstitutional policies and practices have perpetuated the contemporary equivalent of a debtors' prison in this Judicial District, especially in the Town of Valley Brook, Oklahoma ("Valley Brook").

2.     Plaintiffs were each jailed or threatened to be jailed by Valley Brook solely because they could not afford a monetary payment to Valley Brook for a traffic ticket or other minor

EXHIBIT 2

offense. In each case, Plaintiffs explained to Valley Brook Municipal Judge Stephen Haynes, a municipal official, or a Valley Brook employee that they could not pay fines, fees, and costs (hereinafter, "fines") for minor offenses. But they were ignored. The Valley Brook Municipal Court did not afford them a lawyer, inquire into their ability to pay, or consider reasonable payment alternatives, as required by federal and state law. Instead, a municipal judge and other officials and employees threatened Plaintiffs, detained them, and instructed them to contact loved ones for money to avoid imprisonment. When it became apparent that Plaintiffs could not access funds, Valley Brook sent them to Oklahoma County jail.

3.      No state may punish an individual just because he or she cannot afford to pay judicially imposed fines. The rights afforded by the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution protect an individual from arrest, detention, incarceration, or imposition of other penalty, solely because of an inability to pay court-imposed fines, costs, fees, or restitution. The Oklahoma Constitution enshrines these same protections.

4.      Oklahoma courts have also implemented procedural rules specifically to prevent incarcerating individuals or threatening to incarcerate individuals, like Plaintiffs, due to inability to pay. Rule 8 of the Oklahoma Court of Criminal Appeals requires municipal courts to make an ability to pay determination both (i) when fines are assessed, and (ii) at any and every subsequent hearing at which punishment is to be imposed. 22 Okla. St. Ch. 18, Rules 8.1, 8.4, and 8.5. In accordance with these Rules, municipal courts must hold "Rule 8 hearings" to evaluate financial circumstances and consider reasonable payment alternatives whenever a municipal defendant alleges an inability to pay.

5.      Rule 8.7 of the Oklahoma Court of Criminal Appeals also requires a court reporter

to be present and report all judicial hearings required by Rule 8, and requires that

> Any order of the court . . . shall be reduced to writing and filed of record in the case. The order shall set forth the findings of the court regarding the defendant's ability or inability to pay the fine and/or costs, the refusal or neglect to do so, if that be the case, the amount of the installments and due dates, if so ordered, and all other findings of facts and conclusions of law necessary to support the order of the court.

22 Okla. St. Ch. 18, Rule 8.7.

6.      Yet neither Valley Brook, nor its municipal judge, officials, or employees follow these Rules. The Valley Brook Municipal Court rarely conducts inquiries into individuals' ability to pay before imposing fines or jailing or threatening to jail municipal defendants for failure to pay, let alone offers to record any such hearings. Instead, municipal officials and employees— through their conduct, decisions, rules, policies and practices—have implemented a debt-collection scheme that flouts procedural protections to raise revenue from Oklahoma's poorest residents. This scheme has been in place for many years, operated by a municipal judge and other officials and employees, including but not limited to the Valley Brook Police Department ("VBPD"), Valley Brook Municipal Court Judge Stephen Haynes, the Mayor of Valley Brook Lewis Nieman, and Valley Brook Municipal Court staff.

7.      As a matter of policy and practice, the VBPD, through Chief Michael Stamp and its officers, enables Valley Brook to collect an inordinate amount of fine revenue by:

a.   Stopping individuals for minor municipal violations and searching those individuals' private possessions, without legal justification, for the chance of uncovering narcotics and paraphernalia;

b.   Taking arrestees to the Valley Brook Police Station and informing arrestees that they can only be released upon payment of an arbitrary amount;

c.   Transferring and detaining anyone who cannot pay the municipally-created sum to Oklahoma County jail; and

d.   Arranging for arrestees to be held in the Oklahoma County jail for days until the next weekly court hearing in Valley Brook without any judicial appearance.

8.     As a matter of policy and practice, Judge Haynes and municipal court staff aggressively collect outstanding fine revenue by:

    a.  Demanding full payment of fines for traffic and municipal violations, without any inquiry into whether the person has the ability to pay, and without advising them of their right to counsel;

    b.  Ignoring or arbitrarily denying requests for relief from full payment due to inability to pay;

    c.  Failing to consider "time payment applications" where individuals request a reasonable alternative to payment in full, reduced fines, and/or community service;

    d.  Threatening defendants with incarceration if they cannot afford to pay fines;

    e.  Directing individuals who cannot afford to pay fines to call loved ones for money to pay the fines so that the individual can avoid imprisonment;

    f.  Arbitrarily modifying monetary payments to the amount individuals have in their possession without any formal process;

    g.  Automatically issuing bench warrants for "Failure to Appear," without inquiring into the reasons for the failures to appear, which subjects individuals to additional fines; and

    h.  Incarcerating people for their inability to pay fines without informing them of their right to counsel and without providing counsel.

9.     Municipal officials, including Mayor Lewis Nieman, know about, encourage, and participate in these policies and practices by, *inter alia*, attending municipal court proceedings, reviewing requests for payment relief from defendants who cannot pay, and recommending and/or directly deciding how Valley Brook should respond to those requests. In fact, Mayor Neiman frequently negotiates with municipal defendants, their families, and the City Attorney to determine total fines a municipal defendant must pay to avoid immediate incarceration. This bargaining takes place at the courthouse, sometimes, but not always, with input from Judge Haynes, and always without the appointment of counsel.

10.    Each Plaintiff has experienced these Valley Brook policies and practices firsthand.

All were arrested by the VBPD for minor municipal offenses and sent to Oklahoma County jail for multiple days when they could not afford to pay an arbitrary amount for release. All then went before Judge Haynes in the Valley Brook Municipal Court, at which time Ms. Hill and Mr. Garnett were re-jailed solely because they could not afford to pay their fines in full, while Ms. McCorkle was coerced to pay in full to avoid imprisonment, despite raising inability to pay as an issue. Mr. Garnett and Ms. Hill still owe debts relating to their offenses. None of the Plaintiffs, at any relevant stage of their municipal proceedings, received a meaningful inquiry into their ability to pay fines for municipal offenses, as required by federal and state law.

11.     By and through their attorneys and on behalf of a class of similarly-situated people, Plaintiffs now seek the vindication of their fundamental rights, compensation for the violations that they suffered, injunctive relief assuring that their rights will not be violated again, and a declaration that Defendants' conduct is unlawful.

## JURISDICTION AND VENUE

12.     This civil action arises under 42 U.S.C. § 1983, the Fourth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, and the Second Article of the Oklahoma Constitution.

13.     This Court has personal jurisdiction over the parties pursuant to 12 Okla. St. § 2004, which provides that "[a] court of this state may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States." All Defendants also reside in Oklahoma.

14.     This Court has subject matter jurisdiction pursuant to Okla. Const. Art. VII, § 7, which provides that "[t]he District Court shall have unlimited jurisdiction of all justiciable matters, except as otherwise provided in this Article."

15.     Venue is proper against all Defendants under 12 Okla. Stat. § 133, which provides that venue is proper in the county where the cause arose or where there was an undertaking by a public officer.  The acts complained of herein occurred principally in Valley Brook, a town in Oklahoma County, Oklahoma.

## PARTIES

**Plaintiffs**

16.     **Kimiesha Hill** is a 37-year-old resident of Oklahoma City, Oklahoma.  Ms. Hill is a single mother with three children, ages eleven, eight, and one.  She is currently self-employed, working out of her home as a hairstylist.

17.     On or around January 31, 2020, Ms. Hill was arrested and charged with driving with a broken taillight, driving with a suspended license, possession of a controlled dangerous substance, and possession of paraphernalia after a Valley Brook police officer pulled her over on Southeast 59th Street in Valley Brook for driving with an alleged broken taillight.  The car belonged to Ms. Hill's friend who was sitting in the passenger seat.

18.     During the stop, the police officer determined that Ms. Hill's license was suspended.  He also saw marijuana in the car, which belonged to the owner of the vehicle, who had a medical marijuana license.  The officer immediately arrested Ms. Hill and the owner of the vehicle and placed them in the back of two separate police vehicles.

19.     After arresting Ms. Hill and the owner of the vehicle, the police officer searched the entire vehicle without consent from Ms. Hill or the vehicle's owner and found a mirror, which the police claimed was drug paraphernalia.

20.     The police officer took Ms. Hill to the Valley Brook Police Station.  No one informed Ms. Hill of the charges against her.  Instead, police officers refused to release her unless she paid several thousand dollars—the full amount of the fines that they had arbitrarily assessed

against her.  No one explained that amount to Ms. Hill or otherwise provided information on how those fines were assessed or what they were for.  Ms. Hill was not able to pay that amount of money.

21.     Valley Brook police officers allowed Ms. Hill to keep her cell phone while in the jail cell and instructed her to contact bail bondsmen, friends, and family to try to obtain the full amount that was assessed against her arbitrarily to be released.

22.     After several hours, because Ms. Hill was unable to pay off the full amount, the VBPD transferred Ms. Hill to Oklahoma County jail, where she was booked as an inmate on February 1, 2020.  She was never advised of her right to counsel, offered counsel, or appointed counsel.  Ms. Hill spent five days in jail.  She was never afforded an appearance in court, but rather held until the next scheduled municipal court session in Valley Brook, which occur only weekly.

23.     On February 6, 2020, Ms. Hill was released on her own recognizance, even though she still owed outstanding fines, after the weekly Valley Brook Municipal Court session was cancelled due to inclement weather.  She was instructed to attend the next court session on February 12, 2020.

24.     On February 12, 2020, Ms. Hill attended her scheduled hearing at Valley Brook Municipal Court before Judge Haynes.  She did not have an attorney.

25.     Judge Haynes' hearings on February 12, 2020 all related to unpaid fines that, on information and belief, were assessed against other individuals in a manner similar to Ms. Hill. Before hearing any individual cases, but while Ms. Hill and other municipal defendants were in the courtroom, Judge Haynes explained to everyone present in the courtroom that if they pleaded guilty or no contest to municipal charges, they would be required to pay fines in full before the end of the court session or else be sent to jail.  Judge Haynes states that if they pleaded not guilty,

they would have to stay in jail until trial or pay a trial bond.  He stated that individuals could complete a "time payment application" to request an alternative to payment in full, such as an extension of time to pay or community service, but stated that he rarely grants those applications. Ms. Hill was not aware of these options before attending court on February 12, 2020.

26.    At the outset of the proceedings, Judge Haynes also advised all municipal defendants, which included Ms. Hill, to speak with the City Attorney about the fines assessed against them.  Judge Haynes did not advise any municipal defendants of their right to counsel or appoint counsel for any defendants at any point up until and including this hearing.

27.    Ms. Hill also saw Mayor Nieman, at the front of the courtroom.  She observed him speaking with the City Attorney and other municipal defendants over the course of the evening, but she did not personally interact with him.

28.    Ms. Hill spoke with the City Attorney, who calculated her total fines on the spot as more than one thousand dollars.  The City Attorney did not provide a copy or otherwise explain the assessment.  During this meeting, Ms. Hill attempted to tell the City Attorney that the controlled substance underlying the charges against her did not belong to her.  The City Attorney nevertheless suggested that she plead guilty or no contest so that she could make a payment and be released.

29.    Later that night, Ms. Hill pleaded no contest in front of Judge Haynes, at which time Judge Haynes stated that she could not leave the courtroom unless she paid the full amount of the fines assessed against her before the end of the night.  Before accepting the plea, Judge Haynes did not engage in a colloquy to confirm whether Ms. Hill's plea was knowing or voluntary. Similarly, before imposing the fine, Judge Haynes did not determine whether Ms. Hill could afford the fine.  He did not ask her about her employment status, assets, or financial obligations.

30.     Without prompting from Judge Haynes, Ms. Hill told Judge Haynes that she was not able to pay the full amount. She also explained that she was a single mother with three children, did not have family in the area, and lost her job with a home healthcare company while in jail. Judge Haynes did not lower the fine, giving her only one choice: pay the full amount or go back to jail. Judge Haynes then directed Ms. Hill to call family and friends for money and detained Ms. Hill in the courtroom until she paid in full.

31.     Given Ms. Hill's inability to pay the full amount, Ms. Hill filled out a time pay application in which she explained that she was a single mother with three children, no job, and could not afford the amount owed due to her current assets and pre-existing financial obligations. She provided the time pay application to Judge Haynes.

32.     Judge Haynes took the application and immediately asked for full payment without addressing the contents of the application. Ms. Hill was not offered a Rule 8 hearing, let alone a court reporter to transcribe a Rule 8 hearing or any order describing Judge Haynes' findings with respect to her ability to pay. Instead, Judge Haynes sent her back to Oklahoma County jail when it became apparent that she could not pay the fines assessed against her in full. Ms. Hill was not provided an attorney, nor was she informed of her right to request or obtain an attorney before being sent to jail for her inability to pay.

33.     Ms. Hill remained in jail until February 17, 2020, when she was again released on her own recognizance, even though she still owed outstanding fines. Under Oklahoma law, each day in jail may be credited against a defendant's outstanding debts. *See* 11 Okla. § 27-122 (establishing a credit of $25 per day). Ms. Hill earned a credit of $100 per day, to be credited against the outstanding fines assessed against her.

34.     As noted above, Ms. Hill ultimately lost her job due to the time she spent in jail in

connection with this incident.  She is planning to apply to dermatology school, but has felt deterred from doing so because of the charges and outstanding fines assessed against her.

35.     Because of the pandemic, Ms. Hill has yet to receive a notice of a new court date. In March 2020, she received a call from the Valley Brook Municipal Court telling her that she still owed several hundred dollars.  Ms. Hill explained at that time that she still could not afford that amount.

36.     Even though Judge Haynes did not grant Ms. Hill's time pay application, and instead sent her to jail where she remained for five days, a warrant was issued on June 12, 2020 for Ms. Hill's arrest, for failure to obey time pay.  The warrant was sent to her home address.  The warrant assessed an additional fine of $223.05 for failure to obey/time pay and $445.00 for "warrant."  The warrant was signed by Judge Haynes and required Ms. Hill to pay $668.05 in cash. *See* Exhibit A.

37.     Ms. Hill was, and remains, unable to pay her fines.  Ms. Hill, who has been actively searching, but struggling to find work during the pandemic, has been working out of her home as a hairstylist to care for and support her three children.  Ms. Hill cannot pay the fines assessed against her and also afford basic necessities for herself and her children, and her inability to pay her fines places her in imminent danger of repeated incarceration.

38.     The unlawful practices employed by Defendants took a severe toll on Ms. Hill and her family.  Her three children, ages eleven, eight, and one had to spend multiple days without their mother.  As a result of this incident, Ms. Hill and her children fear that she will again be forced to spend days in jail for her continued inability to pay.

39.     **Jason Garnett** is a 49-year-old who resided in Oklahoma City, Oklahoma from 2013 to 2020, and now resides in Alma, Arkansas.  Mr. Garnett has been unemployed since August

2019 due to injuries he sustained in a motorcycle accident.

40.     On or around January 29, 2020, Mr. Garnett was arrested and charged in Valley Brook, upon information and belief, with driving with a suspended license, driving without insurance, driving with improper tags, speeding, and possession of a controlled substance after a Valley Brook police officer pulled him over on Southeast 59th street for speeding.  Because Mr. Garnett did not have insurance, the officer arranged to impound Mr. Garnett's car during the stop, which cost hundreds of dollars to retrieve.

41.     The officer took Mr. Garnett to the Valley Brook Police Station, where officers refused to release him unless he paid several thousand dollars, the full amount of fines they arbitrarily assessed against him.  Mr. Garnett was not able to pay.

42.     Valley Brook police officers allowed Mr. Garnett to keep his cell phone while in the jail cell and instructed him to contact bail bondsmen, family, and friends to try to obtain the full amount to be released.  The officers told Mr. Garnett that he could only call bail bondsmen from a list of bondsmen prepared by Valley Brook.

43.     After approximately three hours, because Mr. Garnett was unable to pay off the full amount of fines they had arbitrarily assessed against him, the VBPD transferred Mr. Garnett to Oklahoma County jail, where he was booked as an inmate on January 30, 2020.  He was never advised of his right to counsel, offered counsel, or appointed counsel.  Mr. Garnett spent one week in jail.  He was never afforded an appearance in court, but rather held until the next scheduled municipal court session in Valley Brook, which occur only weekly.

44.     On February 6, 2020, Mr. Garnett was released on his own recognizance, even though he still owed outstanding fines, after the weekly Valley Brook Municipal Court session was cancelled due to inclement weather.  He was instructed to attend the next court session on

February 12, 2020.

45.     On February 12, 2020, the same day as Ms. Hill, Mr. Garnett attended his scheduled hearing at Valley Brook Municipal Court before Judge Haynes. He did not have an attorney.

46.     Before Judge Haynes heard any individual cases, Mr. Garnett, like Ms. Hill, heard Judge Haynes explain to everyone present in the courtroom that if they pleaded guilty or no contest to municipal charges, they would be required to pay fines in full before the end of the court session or else be sent to jail.

47.     Mr. Garnett also saw Mayor Nieman in the courtroom. He observed Mayor Nieman speaking with Judge Haynes, the City Attorney, and numerous municipal defendants over the course of the evening. He also interacted with Mayor Nieman personally, who was answering questions about how to fill out time pay applications and who, at the end of the proceeding, told Mr. Garnett that he would be going back to jail.

48.     Before his hearing, Mr. Garnett spoke with the City Attorney, who calculated Mr. Garnett's fines on the spot as several thousand dollars but told Mr. Garnett that he would receive a $100 credit toward his fines for each day he had already spent in jail. *See* 11 Okla. § 27-122.

49.     Later that night, Mr. Garnett pleaded no contest before Judge Haynes, at which time Judge Haynes stated that Mr. Garnett could not leave the courtroom unless he paid the full balance of the fines assessed against him before the end of the night. Before accepting the plea, Judge Haynes did not engage in a colloquy to confirm whether Mr. Garnett's plea was knowing or voluntary. Similarly, before imposing the fine, Judge Haynes did not determine whether Mr. Garnett could afford the fine. He did not ask about Mr. Garnett's employment status, assets, or financial obligations.

50.     Mr. Garnett could not pay the full amount. Mr. Garnett lost his job after a

motorcycle accident in August 2019, and his only source of income was unemployment benefits, which was not enough to cover the fines. Given Mr. Garnett's inability to pay the full amount, Mr. Garnett filled out a time pay application in which he described his unemployment and injuries and explained that he could not afford the amount owed due to his current assets and pre-existing financial obligations. He provided the time pay application to Judge Haynes.

51.     Neither Judge Haynes nor any other municipal official asked about Mr. Garnett's application. Mr. Garnett was not offered a Rule 8 hearing, let alone a court reporter to transcribe a Rule 8 hearing or any order describing Judge Haynes' findings with respect to his ability to pay. Instead, after Mr. Garnett had been sitting in court for approximately six hours, Mayor Nieman informed him he would be going back to Oklahoma County jail when it became apparent that he could not pay the remaining fines assessed against him in full. Mr. Garnett never received an opportunity to discuss his time pay application in a hearing before Judge Haynes.

52.     Mr. Garnett remained in jail for the next four days, at which time he was released and told he could call the Valley Brook Municipal Court for information about his case. On or about February 18, 2020, Mr. Garnett called the Valley Brook Municipal Court and spoke with a clerk, who informed him that he had earned a daily credit toward his fines while in jail and that his fines had been paid off. Mr. Garnett understood that he no longer owed fines.

53.     Due to his imprisonment, Mr. Garnett also owed a little less than one hundred dollars in "pay-for-stay" costs, daily fees imposed on defendants to cover the cost of their jail stay. Mr. Garnett believed that he had paid these additional costs.

54.     In addition to imprisonment, Mr. Garnett was also sentenced to probation for six months, at the end of which he was required to send a copy of his driving records to Valley Brook to prove that he did not incur any additional traffic violations during the probationary period.

Valley Brook provided no other oversight of Mr. Garnett during this probationary period. Mr. Garnett believes that his probation ended on August 12, 2020 after he submitted his driving record. Upon submitting his driving records, he was not warned by employees of Valley Brook Municipal Court that he still owes fines.

55.     On December 16, 2020, Mr. Garnett received a notice of an outstanding citation from Graves Humphries Stahl, Ltd. ("GHS") dated November 30, 2020. *See* Exhibit B (citing 11 Okla. § 11-22-138 (Municipal Collection Agency Contracts)). The notice indicates that Mr. Garnett still owes $587.25 to the Valley Brook Municipal Court and does not provide a breakdown of the amount owed.

56.     Mr. Garnett cannot afford to pay $587.25 to the Valley Brook Municipal Court at this time. While in jail for this incident, Mr. Garnett lost all of his possessions and was forced to move in with his family. He is unemployed, and cannot afford basic necessities. He also still requires additional, costly surgeries for his injuries related to the motorcycle accident in 2019.

57.     **Kiara McCorkle** is a 31-year-old resident of Oklahoma City, Oklahoma. Ms. Hill is a single mother with four daughters, ages nine, four, three, and two.

58.     On or around February 21, 2020, Ms. McCorkle was arrested and charged with drug and drug paraphernalia possession after Valley Brook police officers approached her car, which she had just parked in a parking lot outside of a club in Valley Brook. Ms. McCorkle was using her phone when officers approached her car window. Her friend was in the passenger seat.

59.     Upon reaching the car, the officers told Ms. McCorkle and her friend that they could not loiter in the parking lot. The officers had a drug-sniffing dog circle Ms. McCorkle's car twice, but the dog did not alert to drugs either time. Still, the officers claimed they could smell drugs.

60.     The officers ordered Ms. McCorkle and her friend to exit the vehicle, handcuffed

them, and searched them. The officers found a Xanax in Ms. McCorkle's purse, for which she had a prescription. The officers also found a small, slender pipe.

61.     While arresting Ms. McCorkle and her friend, the police officer also searched Ms. McCorkle's vehicle, including compartments, without consent from Ms. McCorkle. No drugs were found. The officers did find a gun in Ms. McCorkle's friend's purse, which had been sitting in the front passenger seat. But Ms. McCorkle did not know about the gun, which her friend verified for the officers.

62.     The police officer took Ms. McCorkle to the Valley Brook Police Station. No one informed Ms. McCorkle of the charges against her. Instead, police officers refused to release her unless she paid several hundred dollars, an arbitrary portion of the fines that they had assessed against her. No one explained that amount to Ms. McCorkle or otherwise provided information on how those fines were assessed or what they were for. Ms. McCorkle was not able to pay.

63.     Valley Brook police officers allowed Ms. McCorkle to keep her cell phone while in the jail cell and instructed her to contact bail bondsmen, family, and friends to try to obtain the amount to be released. The officers told Ms. McCorkle that she could only call bail bondsmen from a list of bondsmen prepared by Valley Brook. Ms. McCorkle called each of the bondsmen, but each informed her that they would not do business in Valley Brook.

64.     After several hours, because Ms. McCorkle was unable to pay the fines they had assessed against her, the VBPD transferred Ms. McCorkle to Oklahoma County jail, where she was booked as an inmate on February 22, 2020. She was never advised of her right to counsel, offered counsel, or appointed counsel. Ms. McCorkle spent four days in jail. She was never afforded an appearance in court, but rather held until the next scheduled municipal court session in Valley Brook, which occur only weekly.

65.     While in jail, Ms. McCorkle continuously asked for a hearing.  Ms. McCorkle's sister also contacted a bondsman and the Valley Brook Municipal Court for an update on Ms. McCorkle's case.  Neither Ms. McCorkle nor her sister received an answer.  Ms. McCorkle also lost her job while in jail.

66.     On February 26, 2020, Ms. McCorkle was transported directly from Oklahoma County jail to the Valley Brook Municipal Court for its weekly court session before Judge Haynes. She did not have an attorney.

67.     Ms. McCorkle saw Mayor Nieman in the courtroom.  She observed him speaking with the City Attorney and numerous municipal defendants over the course of the evening, and she interacted with him personally several times throughout the night.

68.     Ms. McCorkle first interacted with Mayor Nieman to collect the paperwork for her case.  Mayor Nieman was holding case files and told individual defendants, including Ms. McCorkle, to speak with the City Attorney about a plea.  Mayor Nieman also advised Ms. McCorkle not to talk back to Judge Haynes and to go along with whatever Judge Haynes told her to do.

69.     Before her hearing, Ms. McCorkle spoke with a police officer who told Ms. McCorkle that she should plead guilty to stay on Judge Haynes' "good side" so that the court could assess fines against her and order her release.  Ms. McCorkle also spoke with the City Attorney, who calculated her fines on the spot as several hundred dollars and told her that she would receive a $100 credit toward her fines for each day she had already spent in jail.  *See* 11 Okla. § 27-122.

70.     Later that night, Ms. McCorkle pleaded guilty before Judge Haynes, at which time Judge Haynes stated she could not leave the courtroom unless she paid several hundred dollars, the remaining balance of the fines assessed against her before the end of the night.  Before

accepting the plea, Judge Haynes did not engage in a colloquy to confirm whether Ms. McCorkle's plea was knowing or voluntary. Similarly, before imposing the fine, Judge Haynes did not determine whether Ms. McCorkle could afford the fine. He did not ask about Ms. McCorkle's employment, assets, or financial obligations.

71.     Without prompting from Judge Haynes, Ms. McCorkle told Judge Haynes that she was not able to pay the full amount. She explained that she was a single mother with four children, did not have anyone to watch her children, and had lost her job because of her jail stay. Judge Haynes did not lower the fine, giving her only one choice: pay the full amount or go back to jail. Judge Haynes then directed Ms. McCorkle to call family and friends for money and detained Ms. McCorkle in the courtroom until she paid in full.

72.     Given Ms. McCorkle's inability to pay the full amount, Ms. McCorkle approached Mayor Nieman, who was holding and distributing time payment applications to defendants in the courtroom. Ms. McCorkle asked Mayor Nieman for a time payment application, but he refused to give her an application. Mayor Nieman did not provide a reason for his refusal.

73.     Despite explaining to both Judge Haynes and Mayor Nieman that she could not afford the amount owed due to her current assets and pre-existing financial obligations, Ms. McCorkle was not offered a time payment application or a Rule 8 hearing, let alone a court reporter to transcribe a Rule 8 hearing or any order describing Judge Haynes' findings with respect to his ability to pay. Instead, after Ms. McCorkle had been sitting in court for hours, Judge Haynes told her that she would be going back to jail if she did not pay the full amount.

74.     Threatened with imprisonment, Ms. McCorkle was coerced to ask her sister to pay her fines to avoid additional jail time. Ms. McCorkle eventually used the majority of her income tax return to pay back her sister. Because she lost her job, Ms. McCorkle needed that money to

pay for basic necessities for her children and herself.

75.     Although Ms. McCorkle's sister paid off Ms. McCorkle's fines before the end of the court proceedings, Ms. McCorkle was transported back to the Oklahoma County jail to be released.  She remained in jail for approximately ten to twelve more hours before being released on or about February 27, 2020.

76.     Upon information and belief, because her sister paid her fines, Ms. McCorkle no longer owes money for fines assessed in connection with her February 21, 2020 arrest.  Ms. McCorkle believes she still owes pay-for-stay costs to the Oklahoma County jail as a result of her imprisonment.

77.     As noted above, Ms. McCorkle lost her job due to the time she spent in jail in connection with this incident.  The unlawful practices employed by Defendants also took a severe toll on Ms. McCorkle and her family, as her four children, ages nine, four, three, and two, were forced to spend multiple days without their mother.

**Defendants**

78.     **The Town of Valley Brook** is a political subdivision of the State of Oklahoma, located in Oklahoma County, with its municipal building located at 1618 SE 59th Street, Oklahoma City, OK 73129.  Valley Brook's governing body includes Mayor Nieman and the Valley Brook Board of Trustees.

79.     **Valley Brook Municipal Court** is municipal court not of record located at 1618 SE 59th Street, Oklahoma City, OK 73129.  In Oklahoma, municipalities may create municipal courts not of record with original jurisdiction over violations of municipal ordinances. *See* 11 Okla. St. §§ 27-101, 103.  Municipal courts must deposit all fines into a fund designated by the municipality. *See id.* at § 27-112.  A cause of action in an Oklahoma municipal court not of record

is treated as a criminal cause of action. *See Dutton v. City of Midwest City*, 353 P.3d 532, 542 (Okla. 2015).

80.    **Stephen Haynes** is the lone presiding judge over the Valley Brook Municipal Court.  He has held this position since 1989.  Judge Haynes also serves as municipal judge for seven other municipalities in Oklahoma, including Spencer, Luther, Geary, Crescent, Choctaw, and Nichols Hills.  Municipal judges in Oklahoma are appointed by mayors, receive a municipal salary, and can be removed by a vote of the majority of all members of the municipality's governing body for cause. *See* 11 Okla. St. 27-104.

81.    **Lewis A. Nieman** is the current Mayor of the Town of Valley Brook.  The Mayor's office is located at 1618 SE 59th Street, Oklahoma City, OK 73129.

82.    **Michael Stamp** is the current Chief of the Valley Brook Police Department, which is located at 1618 SE 59th St, Oklahoma City, Oklahoma 73129.

83.    **Valley Brook Police Department** ("VBPD") is a municipal law enforcement agency located at 1618 SE 59th St, Oklahoma City, Oklahoma 73129.

## FACTUAL ALLEGATIONS

### A. Background

84.   Defendants' conduct has occurred within a state that incarcerates its citizens with unusual frequency, even for petty offenses.[1]  Oklahoma's fiscal decisions exacerbate these high incarceration rates: Oklahoma has one of the lowest effective tax rates in the country, and its legislature has refused to raise the revenue necessary to administer its criminal justice system.  As a result, Oklahoma's court system, including municipal courts and the towns that run them, relies heavily on court fines as a source of funding.  "Fines" are monetary sanctions imposed by courts to punish offenders, while "fees" are amounts charged by courts to support case costs.[2]  The number and amount of court fees has expanded significantly in recent years.[3]

85.   Eighty percent of criminal defendants in Oklahoma are indigent and many cannot afford the fines associated with traffic and other minor offenses.  As a result, at least one Oklahoma Court judge has speculated that only 5 to 11 percent of criminal court debt is actually collected.[4]

86.   Yet Valley Brook, through its police department and municipal court, has managed to collect an extraordinary amount of fine revenue from criminal court debt.  In fact, Valley Brook ranks number one in fines as a percentage of total revenue when compared with 384 other

---

[1] *See* Ryan Gentzler, *Accepting Our Highest-in-the-World Incarceration Rate Means Believing That Oklahomans are the Worst People*, OKLA. POL'Y INST. (June 2018), https://okpolicy.org/accepting-our-highest-in-the-world-incarceration-rate-means-believing-that-oklahomans-are-the-worst-people/.

[2] *See* Ryan Gentzler, *The Cost Trap: How Excessive Fees Lock Oklahomans into the Criminal Justice System Without Boosting State Revenue*, OKLA. POL'Y INST. (Feb. 2017), https://okpolicy.org/cost-trap-excessive-fees-lock-oklahomans-criminal-justice-system-without-boosting-state-revenue-executive-summary/; *see also* Ryan Gentzler, *Oklahoma's Debtors' Prisons Aren't Just a Nuisance—They're An Epidemic*, OKLA. POL'Y INST. (Jan. 2018), https://okpolicy.org/oklahomas-debtors-prisons-arent-just-nuisance-theyre-epidemic/.

[3] *Id.*

[4] *Id.*

Oklahoma municipalities, which represent the majority of the state's city and town population.[5] In 2017, the average across all 385 municipalities for fines and forfeitures as a percentage of total revenues was 5.7%.  In comparison, Valley Brook collected approximately $1.1 million in fines and forfeitures, constituting an astounding 65% of the town's total revenue of nearly $1.7 million. Around this time, Valley Brook had an estimated population of only 936, a median household income of approximately $29,000, and a 35% poverty rate.[6]

**B. The VBPD Uses Stops for Municipal Offenses to Conduct Unconstitutional Searches, Which Often Lead to Arrests, Multiple Charges, and Higher Fines**

87.     The VBPD plays a critical role in Valley Brook's ability to generate fine and fee revenue from municipal court debt.  Between 2014 and 2015 alone, the VBPD, which has a relatively small police force and a jurisdiction of about 1.1 miles, issued 3,911 municipal citations generating a total of $463,549.29 in criminal fines.

88.     As Ms. Hill and Ms. McCorkle's cases illustrate, the VBPD has generated these numbers in large part by using minor traffic violations, such as wide turns, use of high beams, and broken taillights, and allegations like loitering to stop people and search their cars.

89.     Upon information and belief, the VBPD regularly places a significant number of officers along Southeast 59th Street, the main thoroughfare in Valley Brook, and routinely stops individuals in that area.

90.     Upon information and belief, the VBPD, regardless of the reason for the stop, routinely orders all drivers and passengers out of the car and searches the vehicle at issue, including the body of the vehicle, closed compartments, and individuals' possessions that are not in plain

---

[5] These statistics are based on the Census Bureau's 2017 Annual Survey of State and Local Government Finances.
[6] *See* Valley Brook, OK, Census Reporter, https://censusreporter.org/profiles/16000US4076500-valley-brook-ok/ (last accessed Dec. 3, 2020).

view.  Upon information and belief, the VBPD regularly conducts these searches without consent, reasonable suspicion, or probable cause, and routinely disregards objections to these searches.

91.    These searches frequently occur after officers have arrested an individual, placed her in handcuffs, and detained her in the back of a police car.[7]

92.    Because of the VBPD's policies and practices, it is common for individuals in Valley Brook to amass a combination of tickets for multiple, minor offenses in connection with one incident.  Multiple tickets means multiple fines owed to the municipality, which, when totaled, can amount to a crippling debt, notwithstanding any fees, costs, surcharges, interest, or jail fees that can (and for poorer defendants inevitably will) be added.

93.    To bully individuals into paying more money to Valley Brook, the VBPD brings those they arrest to the Valley Brook Police Station.  Valley Brook does not have a jail.  While at the police station, officers employ pressure to extort payments from arrestees, including Plaintiffs, for release.  Upon information and belief, the VBPD encourages those they arrest to find money for release by posting a list of approved bondsmen in the cell and giving individuals several hours to make calls and secure sufficient funds.  All Plaintiffs experienced these practices firsthand.

94.    The VBPD releases any individual who can pay (or find someone to pay) the amount for release.  The VBPD transfers those who cannot pay to the Oklahoma County jail.  As Plaintiffs' cases demonstrate, these individuals can sit in jail for up to seven days without a judicial hearing.

**C.  Municipal Court Proceedings Focus on Debt Collection and Lack Basic Constitutional Protections**

95.    Anyone with outstanding fines must appear before the Valley Brook Municipal

---

[7] Pursuant to 22 Okla. St. § 1115.1(4), the VBPD can arrest individuals for certain traffic offenses, including driving with a suspended license.

Court. As described herein, these court proceedings focus on collecting fines and lack basic constitutional protections, which from the outset disadvantage defendants who cannot pay fines. For example, Valley Brook permits anyone who can afford to write a check (and does not want to contest their tickets) to exit the criminal justice system immediately by simply paying their tickets in full. Individuals who cannot afford to write a check are subject to coercive collection efforts by Judge Haynes and other municipal officials and staff, who openly and readily equate "inability to pay" with an immediate jail sentence.

96.    The Valley Brook Municipal Court staff includes Judge Haynes, a court clerk, the City Attorney, at least one police officer, and other administrative staff. Valley Brook generally holds court proceedings one night per week, beginning around six o'clock in the evening. Valley Brook officials, including Mayor Nieman, regularly attend and participate in these open-court proceedings.

97.    Judge Haynes regularly begins these proceedings with a speech about the municipal court process. All municipal defendants are present during the speech. At this time, Judge Haynes relays that anyone who fails to pay their fines in full by the end of the proceedings will be jailed. Each day in jail may be credited against the defendant's outstanding debts. *See* 11 Okla. § 27-122 (establishing a credit of at least $25 per day). Upon information and belief, Judge Haynes announces during his speech that he offers a credit of $100 per day, which can translate into several days of jail time for defendants with multiple tickets and thousands in fines. As described further below, Oklahoma County also charges defendants a daily fee while they are incarcerated (known as "pay-for-stay" costs).

98.    Valley Brook purports to allow indigent defendants to complete a "time payment application" and request a reasonable alternative to payment in full, like community service or

proportional fines. Yet Judge Haynes regularly announces at the outset of these proceedings that he does not grant these applications. Likewise, Judge Haynes and other municipal officials frequently do not propose or permit reasonable payment alternatives, opting instead to force full payments under the threat of imprisonment.

99.     Despite the risk of imprisonment, Valley Brook, as a matter of policy and practice, does not appoint counsel to represent individuals who appear in court, nor does court staff advise individuals who appear in court of their right to counsel or obtain a waiver of the right to counsel. Rather, Judge Haynes encourages defendants to speak with the City Attorney, and come to an agreement with the City Attorney, before officially appearing in front of Judge Haynes. Echoing Judge Haynes, a municipal official, often Mayor Nieman, reads the list of individuals present and encourages them to meet with the City Attorney (in a small room adjacent to the courtroom) before their individual hearing. Upon information and belief, many individuals mistakenly believe that the City Attorney is a public defender.

100.     Upon information and belief, the City Attorney routinely recommends that individuals who cannot afford to pay their fines plead "guilty" or "no contest" and complete a time payment application, without discussing the ramifications of that choice, including that: (i) they are pleading guilty to criminal charges; (ii) a judgment of conviction will be entered against them; and (iii) they risk jail time if they cannot make required payments, which, as evidenced by Plaintiffs' cases, are often imposed by Judge Haynes immediately after he accepts the plea.

101.     Valley Brook, through its municipal officials and employees, also places pressure on individuals to plead "guilty" or "no contest" over "not guilty." To plead "not guilty," individuals must schedule a trial and pay a pretrial bond, which often amounts to an individual's total fines charged *plus* a trial fee. Upon information and belief, Valley Brook, through its

municipal officials, rarely waives pretrial bonds or offers reasonable alternatives for indigent defendants.   In so doing, Valley Brook effectively deprives individuals of their right to receive a trial by compelling indigent defendants to plead "guilty" or "no contest."

102.    Court staff, including Judge Haynes, also ignore the constitutional requirements for accepting pleas, which must be knowing, intelligent, and voluntary.  As Plaintiffs' cases show, Judge Haynes does not engage in the colloquy that is ordinarily necessary for a knowing and intelligent plea.

103.    When individuals plead "guilty" or "not guilty," Judge Haynes simply tells them, in front of everyone in the courtroom, that they are required to pay the full amount of fines *plus* court costs that night, which he calculates on the spot.  Although Rule 8 requires a judge to modify, reduce, set up installment payments, or even waive fines upon a showing of inability to pay, Judge Haynes does not inquire as to whether the person is indigent or can afford to pay the fine, nor does he offer to provide a lawyer if the person cannot afford one.

104.    Rather, as Plaintiffs' experiences show, Judge Haynes immediately directs anyone who expresses an inability to pay to call friends and family for money or face jail time.  Court staff immediately detain the individual at the courthouse.  Despite this detention and risk of additional jail time, no one at the court apprises these individuals of their right to an attorney.

105.    As noted, Judge Haynes offers some indigent individuals the ability to complete time payment application.  But, as Plaintiffs' experiences show, Judge Haynes regularly: (i) denies those applications without cause; (ii) denies those applications for arbitrary reasons unrelated to ability to pay (such as a previous failure to appear at a court hearing, regardless of the reason, how long ago the hearing was, or where the hearing took place); (iii) ignores properly-submitted applications; or (iv) relies on a Valley Brook official, usually Mayor Nieman, to hand out and/or

review applications for him and decide how to move forward.

106. As Plaintiffs' experiences also show, individuals who proactively raise inability to pay as an issue and/or complete time payment applications never receive a meaningful inquiry into their ability to pay, as required by Rule 8. To the contrary, Valley Brook rarely holds Rule 8 hearings, let alone offers court reporters to transcribe such hearings as required by Rule 8.7; and Judge Haynes rarely, if ever, issues an order setting forth his findings regarding the individual's ability or inability to pay any fines. Instead, individuals are subject to coercive tactics by municipal officials and employees seeking to extort full payment and tack on additional costs.

107. In most cases, individuals must negotiate with Judge Haynes or another Valley Brook official, usually Mayor Nieman or the court clerk, to return to court at a later date with the full amount of fines or face jail time. These hearings are rescheduled as soon as one week later, and individuals who cannot pay by the second hearing face jail time. Any return to court involves additional court costs, including a continuance cost. Some individuals bargain directly with Mayor Nieman, without any input from Judge Haynes. Upon information and belief, the Mayor has offered community service to some individuals in lieu of payment, but the criteria for that decision is far from clear and appears arbitrary.

108. In some cases, Judge Haynes, Mayor Nieman, or another municipal actor requires the individual to surrender all of the money in their possession before the individual can leave the courthouse or places the individual on "probation," for a fee, until they return to court with the full amount of fines. This "probation" is not supervised and requires no oversight by Valley Brook officials. As Mr. Garnett's case shows, individuals can also be put on "probation" even if they are sent to jail to earn credit toward their outstanding fines. These arbitrary decisions involve no formal process or meaningful inquiry into a person's ability to pay.

109.    In nearly all cases, before an agreement is reached, Judge Haynes or other court staff direct individuals to contact friends and family to bring money to the courthouse to secure the person's release as soon as possible or else the individual will face jail time.

110.    Municipal officials, including the Mayor, are fully aware of Judge Haynes' practices and have the power to consider removing Judge Haynes from office for cause. *See* 11 Okla. St. § 27-104. Yet, upon information and belief, no municipal official has ever challenged the practices set forth in this Complaint.  To the contrary, municipal officials, like the Mayor, indulge and insert themselves in those practices, in some cases reviewing and ruling on time payment applications themselves, or deciding whether individuals are even entitled to those applications, without any input from Judge Haynes.

111.    In fact, upon information and belief, Judge Haynes' practices vary depending on the municipality in which he sits.  While Judge Haynes rarely grants time pay applications in Valley Brook, and regularly sentences people like Ms. Hill and Mr. Garnett to jail for inability to pay, in other municipalities like Luther, he considers and frequently grants time pay applications.

112.    In a recent article published by *The Luther Register*, Judge Haynes openly admitted that "the city [of Luther] has guided him to be more 'time-pay' friendly with defendants, but in his other courts in other municipalities, he noted there is a 98% day-of fine payment." *See* Dawn Shelton, *Defendants in Luther Municipal Court Need More Time to Pay Fines*, THE LUTHER REGISTER (May 20, 2020), https://www.lutherregister.news/2020/05/20/defendants-in-luther-municipal-court-need-more-time-to-pay-fines/.

113.    No municipal official or employee in Valley Brook meaningfully accounts for an individual's ability to pay before setting a new payment date, forcing a person to surrender all of the money in their possession, or pressuring the individual to find a relative or friend to come to

their aid.  Municipal officials routinely ignore time payment requests and reasonable alternatives, and as a matter of policy and practice, threaten individuals with jail time until they find a way to pay their fines in full.

114.     At best, those who cannot pay find a relative or friend to come to court to pay their fines like Ms. McCorkle, or leave the courthouse after "negotiating" a new payment date that they cannot realistically meet.  As noted above, Judge Haynes routinely orders those who appear before him to return with full payment in as little as a week.  His orders leave some defendants in the difficult position of deciding whether to pay their purported debts or pay for items such as food, shelter, or childcare at the risk of incarceration.  For those like Ms. McCorkle, single mothers with multiple young children, this choice can be debilitating.

115.     At worst, defendants like Ms. Hill and Mr. Garnett find themselves jailed solely due to inability to pay under unreasonable terms.  These individuals receive little to no time to get their affairs in order, such as arranging adequate childcare or notifying their employers.  In some cases, these individuals are hourly or contract employees who cannot take time off and lose their jobs while in jail.  As a result, these individuals lose the little income they have and often struggle to find new jobs because they now have a criminal record that they must disclose.  Some Plaintiffs, like Ms. Hill, have faced all of these problems.

116.     Valley Brook, pursuant to policy and practice, has imprisoned individuals like Ms. Hill and Mr. Garnett who indicate that they cannot afford the fines that Judge Haynes—or another municipal official like the Mayor—sets at municipal court sessions.  Valley Brook, through its officials and employees, has also coerced individuals like Ms. McCorkle into making full payments that they cannot afford with threats of imprisonment, and it has done so without providing due process or conducting any meaningful or individualized inquiry into a person's

ability to pay, and without considering the availability or suitability of alternatives to imprisonment.

117.   Moreover, pursuant to Valley Brook's policies and practices, imprisoned individuals often are left with no record or order to explain or challenge their imprisonment or coerced payment, notwithstanding the reporting requirements of Rule 8.7.[8] As Ms. Hill and Mr. Garnett's cases show, individuals sent to jail to earn credit for fines also accrue incarceration fees, or "pay-for-stay" costs.  Therefore, while individuals may go to jail to pay off their fines, they accrue additional fees simply for being in jail.  These costs become yet another debt that Valley Brook can pursue through municipal court proceedings, thus triggering an inescapable cycle of debt and imprisonment for Oklahoma's poorest residents.  Upon information and belief, an individual with outstanding "pay-for-stay" costs is required to attend municipal court proceedings, subject to imprisonment for failure to pay or appear.

118.   Upon information and belief, Valley Brook's policies and practices have resulted in many people deciding not to attend municipal court hearings when they know they will be unable to pay outstanding fines.

119.   When an individual misses a municipal court date in Valley Brook, court staff, as a matter of policy and practice, automatically issue a bench warrant for "Failure to Appear."  The Court issues this warrant without probable cause and regardless of whether individuals receive adequate notice of the court date or have a valid excuse for their absence.  These warrants empower any municipality to stop and arrest the individual identified.  If arrested, the individual accrues additional fines, including potential pay-for-stay costs, in addition to fines already owed.

---

[8] While the Valley Brook Municipal Court is a "court not of record," *see* 11 Okla. St. § 27-101, Rule 8.7 does not provide a carve out for municipal courts not of record with respect to inability to pay hearings under Rule 8.

## CLASS ALLEGATIONS

120.   The Plaintiffs bring this action on behalf of themselves and all others similarly situated for the purpose of asserting the claims alleged in this Complaint on a common basis.

121.   Plaintiffs will seek to certify four Classes, defined as:

a.   The Outstanding Fines Class is defined as: "All persons who currently owe or will incur debts to Valley Brook from fines, fees, costs, or surcharges arising from cases in the Valley Brook Municipal Court."  The representatives for this Class are Ms. Hill and Mr. Garnett.

b.   The Fined Class is defined as: "All persons who were either jailed, or threatened with jail and coerced into making a full payment, without receiving a hearing or other meaningful inquiry into ability to pay by the Valley Brook Municipal Court." The representatives for this Class are Ms. Hill, Mr. Garnett, and Ms. McCorkle.

c.   The Unreasonable Search Class is defined as: "All persons who were stopped by the VBPD for a municipal violation and had their vehicle searched without reasonable suspicion, probable cause, or voluntary consent."  The representatives for this Class are Ms. Hill and Ms. McCorkle.

d.   The Indefinite Detention Class is defined as: "All persons who were stopped by the VBPD for a municipal violation and were jailed for an indefinite period of time without judicial process."  The representatives for this Class are Ms. Hill, Mr. Garnett, and Ms. McCorkle.

122.   This action is brought and may properly be maintained as a class action pursuant to 22 Okla. St. § 2023(A)(1)–(4) and (B)(2) (injunctive and declaratory relief for the Outstanding Fines Class) and (B)(3) (damages for the Fined, Unreasonable Search, and Indefinite Detention Classes).

### A. Numerosity, § 2023(A)(1)

123.   Members of the proposed Classes are so numerous that joinder is impracticable. Hundreds of indigent people have owed and currently owe Valley Brook money from old traffic tickets and other minor municipal offenses.  Valley Brook, through its police department, municipal court staff, and other municipal officials, has also kept many people in jail for non-payment and coerced many people into making full payments with threats of imprisonment.

124.   Joinder is further impracticable because membership in the large proposed classes is fluid. People enter and leave the proposed Classes every day. Monitoring for these changes, and joining and dismissing plaintiffs repeatedly, would not be a practical way to manage this litigation.

### B. Commonality, §2023(A)(2)

125.   The relief sought is common to all members of the Classes, and common questions of law and fact exist as to all members of the Classes. Plaintiffs seek relief concerning whether Defendants' policies, practices, and procedures violated their rights and relief mandating that Defendants change their policies, practices, and procedures so that the Plaintiffs' rights will be protected in the future.

126.   Common questions of fact include, but are not limited to:

    a.  Whether the VBPD uses stops for municipal offenses to conduct vehicle searches without consent, probable cause, or reasonable suspicion;

    b.  Whether Valley Brook has a policy and practice of keeping people in jail after arrest unless and until they can pay court-assessed fines;

    c.  Whether the initial amount of money required by the VBPD for release is predetermined and/or set without reference to a person's ability to pay;

    d.  Whether Valley Brook and/or Judge Haynes has a policy or practice of failing to conduct meaningful inquiries into the ability of a person to pay before keeping the person in jail for failure to pay;

    e.  Whether the Valley Brook Municipal Court transcribes Rule 8 hearings or inability to pay determinations;

    f.  Whether Valley Brook and/or Judge Haynes has a policy or practice of depriving individuals of their right to a trial by setting a high trial bond;

    g.  Whether Valley Brook and/or Judge Haynes provides adequate legal representation to those jailed for non-payment in proceedings that result in their incarceration;

    h.  Whether all Defendants force residents of Valley Brook and the surrounding area to pay funds to Valley Brook by capturing them in an unending cycle of

indebtedness and incarceration.

127.    Common questions of law include, but are not limited to:

a.    Whether the VBPD can search individuals' cars regardless of the reason for the stop;

b.    Whether keeping people in jail solely because they cannot make a monetary payment is lawful;

c.    Whether people are entitled to a meaningful inquiry into their ability to pay before being coerced to pay fines or jailed by Defendants for non-payment of debts;

d.    Whether people who cannot pay fines are entitled to the consideration of alternatives to incarceration before being forced to pay fines in full or jailed for non-payment of debts;

e.    Whether it is lawful for Valley Brook to keep arrestees in jail after arrest pursuant to an amount that does not take the ability to pay into account;

f.    Whether people are entitled to adequate legal representation in municipal cases that result in incarceration solely for non-payment of fines;

g.    Whether Defendants may jail, threaten to jail, and/or use other harsh debt-collection measures against debtors who cannot immediately pay fines for municipal offenses in full; and

h.    Whether the Valley Brook Municipal Court, as a court of no record, must have a court reporter present to transcribe Rule 8 hearings or inability to pay determinations.

## C. Typicality, § 2023(A)(3)

128.    The named Plaintiffs' claims are typical of the claims of the members of the Classes, and they have the same interests in this case as all other members of the Classes that they represent. Each of them suffered injuries from the failure of Defendants to comply with the basic constitutional provisions described herein. The answer to whether Defendants' policies and practices are unconstitutional will determine the claims of the named Plaintiffs and every other Class member.

129.    If the named Plaintiffs succeed in their claims that the Defendants' policies and

practices violate the law in the way alleged in each claim of the Complaint, then that ruling will likewise benefit every other member of the Classes.

### D. Adequacy, § 2023(A)(4)

130.   The named Plaintiffs are adequate representatives of the Classes, as they have the same basic constitutional claims.  They are members of the Classes, and their interests coincide with, and are not antagonistic to, those of the other Class members.  There are no known conflicts of interest among members of the proposed Classes.

131.   Plaintiffs are represented by attorneys from the Lawyers' Committee for Civil Rights Under Law, Ballard Spahr LLP, and Ward & Glass LLP, all of whom are experienced in litigating complex civil rights matters and class action lawsuits.

132.   The efforts of Plaintiffs' counsel have so far included extensive investigation for more than one year, including numerous interviews with witnesses, Valley Brook's employees, Valley Brook's previous jail inmates, families, attorneys practicing in Oklahoma Municipal Courts, and community members.

133.   Counsel have also observed numerous courtroom hearings in Valley Brook and other municipalities across the region in order to compile a detailed understanding of state law practices as they related to federal and state constitutional requirements and court rules.  Counsel have studied the way that these systems function in other cities in Oklahoma in order to investigate the wide array of options in practice for municipalities.

134.   As a result, counsel have devoted enormous time and resources to becoming intimately familiar with the Defendants' scheme and with all of the relevant state and federal laws and procedures that can and should govern it.  Counsel also have developed relationships with many of the individuals and families most victimized by Defendants' practices.

135.    The interests of the members of the Classes will be fairly and adequately protected by the Plaintiffs and their attorneys.

**E. General Applicability, § 2023(B)**

136.    Class action status is appropriate because Defendants, through policies, practices, and procedures that make up a traffic and ordinance debt-collection scheme, have acted and refused to act on grounds generally applicable to the Outstanding Fines Class.

137.    A declaration that Defendants cannot jail people or threaten to jail people solely because they cannot afford to make a monetary payment will apply to each Class member.

138.    Similarly, a determination that Class members are entitled, as a matter of federal and state law, to a meaningful inquiry into their ability to pay and an evaluation of alternatives to incarceration before they are jailed or threatened with jail by Defendants for non-payment will apply to each Class member.

139.    The same applies to rulings on the other claims, including: that Class members are entitled to representation by counsel at proceedings initiated and litigated by Defendants in connection with which they are jailed or threatened with jail; that Defendants cannot imprison or threaten Class members with imprisonment for debts without an ability to pay determination; and that Defendants cannot collect debts from Class members in a manner that violates and evades all of the relevant protections for other judgment debtors.

140.    Injunctive relief compelling Defendants to comply with these constitutional rights will similarly protect each member of the Class from being again subjected to the Defendants' unlawful policies and practices with respect to the debts that they still owe and protect those who will incur such debts in the future from the same unconstitutional conduct. Therefore, declaratory and injunctive relief with respect to the Outstanding Fines Class as a whole is appropriate.

## F. Predominance and Superiority, § 2023(B)(3)

141.    Class treatment under 22 Okla. St. § 2023(B)(3) is also appropriate because the common questions of law and fact overwhelmingly predominate in this case. The predominant questions in this case concern whether Defendants' policies and practices violate the proposed Class members' constitutional and statutory rights. These questions are susceptible to generalized, class-wide proof. There is no individualized evidence or legal argument required to succeed on such a claim.

142.    Class-wide treatment of liability is a far superior method of determining the content and legality of Defendants' policies and practices than individual suits by hundreds or thousands of individuals arrested and detained by Defendants. In fact, there is no realistic alternative for members of the proposed Classes to try their claims. As people who cannot afford fines for municipal offenses, people searching for work, and people unable to work due to disabilities, members of the proposed Classes are not likely to be able to invest the resources necessary to retain an attorney or bring their claims *pro se*.

143.    The question of damages will also be driven by class-wide determinations. To the extent that individual damages will vary, they will vary depending in large part on the amount of time that a person was unlawfully jailed, and any lost wages that a person suffered. Determining damages for individual Class members can thus typically be handled in a ministerial fashion based on easily verifiable records of the length of unlawful incarceration. If needed, individual hearings on Class-member specific damages based on special circumstances can be held after Class-wide liability is determined—a method far more efficient than the wholesale litigation of hundreds or thousands of individual lawsuits.

## CAUSES OF ACTION

### COUNT I:
#### IMPRISONMENT OR THREAT OF IMPRISONMENT FOR FAILURE TO PAY A FINE IN VIOLATION OF THE DUE PROCESS AND EQUAL PROTECTION CLAUSES OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983

Against the Town of Valley Brook, the Valley Brook Municipal Court, Mayor Nieman, and Judge Haynes

144.   Plaintiffs re-allege and incorporate by reference all allegations in the foregoing paragraphs.

145.   Ms. Hill and Mr. Garnett bring this claim on behalf of themselves and members of the Outstanding Fines Class, while Ms. Hill, Mr. Garnett, and Ms. McCorkle bring this claim on behalf of the Fined Class.

146.   Defendants, at all relevant times, included an Oklahoma municipality and its employees and agents.  Defendants were, at all relevant times, acting under color of law.

147.   The Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution prohibit jailing a person solely because of inability to make a monetary payment. *Bearden v. Georgia*, 461 U.S. 660, 671 (1983).

148.   Defendants violated Plaintiffs' rights by jailing Plaintiffs when they could not afford to pay the debts allegedly owed from traffic and other minor offenses, and/or coercing them to make full payments with threats of imprisonment without consideration of alternatives even when they raised inability to pay as an issue.  Defendants violated Plaintiffs' rights by imprisoning them, and by threatening to imprison them for non-payment, without conducting any inquiry into their ability to pay and without considering alternatives to imprisonment.  At any moment, a person with financial resources in the Plaintiffs' position could have paid a sum of cash and been released from jail.  Defendants' imprisonment of Ms. Hill and Mr. Garnett exemplify these policies,

practices, and customs.

149.    Defendants' policies and practices of placing and keeping Plaintiffs in jail unless and until they are able to pay violates the Fourteenth Amendment.

150.    In the absence of prospective relief, Outstanding Fines Class members are likely to remain in jail, be jailed, or coerced into making full payments they cannot afford in violation of their rights to due process and equal protection.   On behalf of themselves and the Outstanding Fines Class, Ms. Hill and Mr. Garnett seek declaratory and injunctive relief against Valley Brook, the Valley Brook Municipal Court, and Mayor Nieman, and declaratory relief against Judge Haynes.

151.    On behalf of themselves and the Fined Class, Ms. Hill, Mr. Garnett, and Ms. McCorkle seek damages against Valley Brook, and Judge Haynes in his individual capacity.

**COUNT II:**
**FAILURE TO PROVIDE AN OPPORTUNITY TO BE HEARD PRIOR TO ARREST, DETENTION, OR OTHER PUNITIVE ACTION IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983**

Against the Town of Valley Brook, the Valley Brook Municipal Court, Mayor Nieman, and Judge Haynes

152.    Plaintiffs re-allege and incorporate by reference all allegations in the foregoing paragraphs.

153.    Ms. Hill and Mr. Garnett bring this claim on behalf of themselves and the Outstanding Fines Class, while Ms. Hill, Mr. Garnett, and Ms. McCorkle bring this claim on behalf of themselves and the Fined Class.

154.    Defendants, at all relevant times, included an Oklahoma municipality and its employees and agents.  Defendants were, at all relevant times, acting under color of law.

155.    In order to protect individuals not represented by counsel from being incarcerated

based solely on their ability to pay, or from being coerced into making payments they cannot afford under threat of incarceration without consideration of alternatives, due process demands notice to a defendant that ability to pay is a critical issue.   Due process also demands a meaningful opportunity to be heard on the question of his or her financial circumstances. *See Turner v. Rogers*, 564 U.S. 431, 447–48 (2011).

156.   As a matter of policy and practice, Defendants routinely arrest and detain individuals and coerce individuals to make full payments by using threats of detention without any meaningful opportunity to be heard on their ability to pay.   In fact, Rule 8 hearings are rarely held and reasonable alternatives to payment in full seldom considered.   Despite informing a municipal judge, official, or employee of their inability to pay and explaining why they could not pay the fines assessed, neither Ms. Hill, Mr. Garnett, nor Ms. McCorkle received a meaningful inquiry into their ability to pay before being sentenced to jail on that basis or coerced to pay in full without any consideration of alternatives.

157.   Defendants' actions have caused Plaintiffs and others similarly situated to suffer a deprivation of liberty, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

158.   In the absence of prospective relief, Plaintiffs and proposed class members are likely to be jailed in violation of their right to due process.   On behalf of themselves and the Outstanding Fines Class, Ms. Hill and Mr. Garnett seek declaratory and injunctive relief against Valley Brook, the Valley Brook Municipal Court, and Mayor Nieman, and declaratory relief against Judge Haynes.

159.   On behalf of themselves and the Fined Class, Ms. Hill, Mr. Garnett, and Ms. McCorkle seek damages against Valley Brook, and Judge Haynes in his individual capacity.

## COUNT III:
## DENIAL OF DUE PROCESS IN VIOLATION OF ARTICLE 2, SECTION 7 OF THE OKLAHOMA CONSTITUTION

Against the Town of Valley Brook, Valley Brook Municipal Court, Mayor Neiman, and Judge Haynes

160.    Plaintiffs re-allege and incorporate by reference all allegations in the foregoing paragraphs.

161.    Ms. Hill and Mr. Garnett bring this claim on behalf of themselves and members of the Outstanding Fines Class.

162.    Article 2, Section 7 of the Oklahoma Constitution provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law." Okla. Const. Art. 2 § 7.

163.    Rules 8.4 and 8.5 provide procedures for Oklahoma courts to follow.  Rule 8.4 provides that defendants who fail to make an installment payment "must be given an opportunity to be heard" and are subject to incarceration if "no satisfactory explanation" is provided at "the hearing on failure to pay." 22 Okla. St. Chap. 18, Appx., Rule 8.4.  Rule 8.5 mandates that defendants unable to pay due to physical disability or poverty "must be relieved of the fine and/or costs; or, in the alternative, be required to report back to the court at a time fixed by the court to determine if a change has made it possible for the defendant to commence making installment payments toward the satisfaction of fine and/or costs." 22 Okla. St. Chap. 18, Appx., Rule 8.5.

164.    Rule 8.7 provides that "[a] court reporter shall be present and report all such judicial hearings by [Rule 8]," while "[a]ny order of the court . . . shall be reduced to writing and filed of record in the case." Rule 8.7 does not exempt municipal courts not of record, like the Valley Brook Municipal Court.

165.    Valley Brook, through its police department, municipal court, and other municipal officials, has followed policies, practices, or customs of imprisoning, or threatening to imprison,

individuals who are unable to pay their court-ordered fines. Valley Brook has imprisoned or threatened to imprison individuals without affording an opportunity to be heard on whether failure to pay was willful. Upon information and belief, no order is issued to explain the sentence, nor is a court reporter provided or offered to transcribe inability to pay hearings. These policies, practices, or customs violate the Due Process Clause of the Oklahoma Constitution. Defendants' imprisonment of Ms. Hill exemplifies these policies, practices, and customs.

166.    Furthermore, Judge Haynes has not relieved indigent individuals of their fines and/or costs or required these individuals to report back to consider whether a change of condition permitted them to commence making payments. Instead, Judge Haynes has ordered indigent defendants to make payments they could not afford and incarcerated, or threatened to incarcerate them when they were too poor to do so.

167.    In the absence of prospective relief, Outstanding Fines Class members are likely to be jailed in violation of their rights to due process. On behalf of themselves and the Outstanding Fines Class, Ms. Hill and Mr. Garnett seek declaratory and injunctive relief against Valley Brook, the Valley Brook Municipal Court, Mayor Nieman, and Judge Haynes.

**COUNT IV:**
**JAILING PLAINTIFFS INDEFINITELY WITHOUT A JUDICIAL HEARING IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983**

Against the Town of Valley Brook, Michael Stamp, and the VBPD

168.    Plaintiffs re-allege and incorporate by reference all allegations in the foregoing paragraphs.

169.    Plaintiffs Ms. Hill, Mr. Garnett, and Ms. McCorkle bring this claim on behalf of themselves and members of the Indefinite Detention Class.

170.    Defendants, at all relevant times, included an Oklahoma municipality and its

employees and agents.  Defendants were, at all relevant times, acting under color of law.

171.    The Due Process Clause of the Fourteenth Amendment prohibits Defendants from jailing Plaintiffs indefinitely and without any meaningful legal process through which they can challenge their detention by keeping them confined in Oklahoma County jail (routinely for days) unless or until they can make an arbitrarily-determined payment.

172.    On behalf of themselves and the Indefinite Detention Class, Ms. Hill, Mr. Garnett, and Ms. McCorkle seek damages against Valley Brook.

**COUNT V:**
**EXCESSIVE FINES IN VIOLATION OF THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983**

Against All Defendants

173.    Plaintiffs re-allege and incorporate by reference all allegations in the foregoing paragraphs.

174.    Ms. Hill and Mr. Garnett bring this claim on behalf of themselves and the Outstanding Fines Class, while Ms. Hill, Ms. McCorkle, and Mr. Garnett bring this claim on behalf of themselves and the Fined Class.

175.    Defendants, at all relevant times, included an Oklahoma municipality and its employees and agents.  Defendants were, at all relevant times, acting under color of law.

176.    The Eighth Amendment provides "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  When an order to pay money does not cover actual costs associated with the litigation, it is considered a fine, which is subject to Eighth Amendment scrutiny. *See, e.g.*, *Wright v. Riveland*, 219 F.3d 905 (9th Cir. 2000).

177.    Defendants' fees are punitive.  For example, upon information and belief, Defendants charge municipal defendants a "probation fee" although Defendants do not oversee or

monitor municipal defendants while on probation.  Thus, Defendants do not incur any actual costs related to the "probation."

178.    Valley Brook also charged each Plaintiff thousands of dollars for minor municipal offenses, many of which were calculated on the spot by Valley Brook officials and employees.

179.    Valley Brook also specifically charged Ms. Hill an additional fine of $223.05 for failure to obey time pay, when she had not been granted time pay, and a fine of $445.00 for "warrant." *See* Exhibit A.

180.    In the absence of prospective relief, Ms. Hill, Mr. Garnett, and the proposed class members are likely to be subject to punitive fines in violation of the Eight Amendment.  On behalf of themselves and the Outstanding Fines Class, Ms. Hill and Mr. Garnett seek declaratory and injunctive relief against the Town of Valley Brook, the Valley Brook Municipal Court, the VBPD, Chief Michael Stamp, and Mayor Nieman, and declaratory relief against Judge Haynes.

181.    On behalf of themselves and the Fined Class, Ms. Hill, Ms. McCorkle, and Mr. Garnett seek damages and restitution against Valley Brook and Judge Haynes in his individual capacity.

### COUNT VI:
### IMPRISONING OR THREATENING TO IMPRISON PLAINTIFFS FOR NON-PAYMENT OF DEBTS WITHOUT APPOINTING ADEQUATE COUNSEL OR SECURING A KNOWING AND INTELLIGENT WAIVER OF COUNSEL IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION, AND 42 U.S.C. § 1983

Against the Town of Valley Brook, Valley Brook Municipal Court, Mayor Neiman, and Judge Haynes

182.    Plaintiffs re-allege and incorporate by reference all allegations in the foregoing paragraphs.

183.    Ms. Hill and Mr. Garnett bring this claim on behalf of themselves and the

Outstanding Fines Class, while Ms. Hill, Mr. Garnett, and Ms. McCorkle bring this claim on behalf of themselves and members of the Fined Class.

184.   Defendants, at all relevant times, included an Oklahoma municipality and its employees and agents.  Defendants were, at all relevant times, acting under color of law.

185.   The Sixth and Fourteenth Amendments to the U.S. Constitution guarantee the right to effective assistance of counsel when individuals face incarceration for nonpayment of fines, fees, court costs, assessments, or restitution. *Argersinger v. Hamlin*, 407 U.S. 25, 37 (1972).  Any waiver of the right to counsel must be knowing, intelligent, and voluntary.

186.   Judge Haynes and Valley Brook, through its municipal officials and employees, failed to adequately inform Plaintiffs of their right to counsel prior to legal proceedings in the Valley Brook Municipal Court and failed to obtain knowing, intelligent, and voluntary waivers of the right to counsel from Plaintiffs prior to proceedings that led to a sentence of imprisonment and where they knew a prison sentence was likely.

187.   Defendants demonstrate deliberate indifference to the right to counsel of indigent people facing incarceration for nonpayment of court fines, as Defendants (1) make a deliberate decision not to staff public defenders to represent indigent people facing incarceration for nonpayment; (2) make a deliberate decision to encourage people to come to a plea agreement with the City Attorney without fully explaining the City Attorney's motivations and while giving the appearance that the City Attorney is safeguarding their legal interests; (3) make a deliberate decision not to assign public defenders to meet with indigent people incarcerated for days in Oklahoma County jail; and (4) make a deliberate decision not to conduct a waiver colloquy before conducting proceedings that lead to imprisonment and where they know a prison sentence is likely.

188.   Defendants make these decisions knowing that the sole purpose of the hearing is to

extract payment from individuals who appear before Judge Haynes, and that those who do not pay will be incarcerated.

189.    The Defendants' policy of not providing adequate counsel in proceedings in which indigent people are ordered to be imprisoned in Oklahoma County jail for non-payment, which are, in turn, based on traffic and other violations at which the person was also unrepresented, violates the Sixth and Fourteenth Amendments.

190.    In the absence of prospective relief, Ms. Hill, Mr. Garnett, and the Outstanding Fines Class are likely to be jailed without effective assistance of counsel in violation of their due process and Sixth Amendment rights.  On behalf of themselves and the Outstanding Fines Class, Ms. Hill and Mr. Garnett seek declaratory and injunctive relief against the Town of Valley Brook, the Valley Brook Municipal Court, and Mayor Nieman, and declaratory relief against Judge Haynes.

191.    On behalf of themselves and the Fined Class, Ms. Hill, Ms. McCorkle, and Mr. Garnett seek damages against the Town, and Judge Haynes in his individual capacity.

## COUNT VII:
### UNREASONABLE SEARCHES IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983

Against the Town of Valley Brook, Michael Stamp, and the VBPD

192.    Plaintiffs re-allege and incorporate by reference all allegations in the foregoing paragraphs.

193.    Ms. Hill and Ms. McCorkle bring this claim on behalf of themselves and the Unreasonable Search Class.

194.    Defendants, at all relevant times, included an Oklahoma municipality, and its employees and agents.  Defendants were, at all relevant times, acting under color of law.

44

195.    The Fourth Amendment, which is applied to states through the Fourteenth Amendment, prohibits unreasonable searches and seizures.   Warrantless searches are unreasonable unless they fall within a few specific established and well-delineated exceptions.

196.    Valley Brook, through Chief Michael Stamp and the VBPD, employs a policy and practice of regularly conducting searches without a warrant and without articulable facts to support a reasonable suspicion that Plaintiffs had or were in the process of engaging in illegal activity, that Plaintiffs were armed and dangerous, or any other basis that would justify a search of Plaintiffs' property.   The VBPD also conducts searches of closed compartments within vehicles without a warrant and without probable cause.   Furthermore, the VBPD does not give an individual meaningful choice to refuse a search.

197.    After VBPD officers detained Ms. Hill for driving with a suspended license, VBPD officers searched the entire car without consent from Ms. Hill or the vehicle's owner, reasonable suspicion or probable cause.

198.    Similarly, after approaching Ms. McCorkle for loitering and deploying a drug detection dog to circle her car twice with no alert, VBPD officers searched Ms. McCorkle's entire car, including a purse contained inside the vehicle, without Ms. McCorkle's consent, reasonable suspicion or probable cause.

199.    On behalf of themselves and the Unreasonable Search Class, Ms. Hill and Ms. McCorkle seek damages against Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court issue the following relief:

a.   Certification of the Outstanding Fines, Fined, Unreasonable Search, and Indefinite Detention Classes, as defined above;

b.   A declaratory judgment that the Town of Valley Brook, the Valley Brook

Municipal Court, Mayor Nieman, and Judge Haynes violated Plaintiffs' Fourteenth Amendment due process and equal protection rights by imprisoning them for their inability to pay a debt without conducting any meaningful inquiry into their ability to pay;

c. A declaratory judgment that the Town of Valley Brook, the Valley Brook Municipal Court, Mayor Neiman, and Judge Haynes have violated Plaintiffs' rights under the Sixth and Fourteenth Amendments by imprisoning or threatening to imprison them without appointing adequate counsel at the proceedings that led to their incarceration;

d. An order and judgment permanently enjoining the Town of Valley Brook, the Valley Brook Municipal Court, Mayor Nieman, Chief Michael Stamp, and the Valley Brook Police Department from enforcing the above-described unconstitutional policies and practices against Plaintiffs and others similarly situated;

e. A judgment compensating the Plaintiffs and others similarly situated for the damages that they suffered as a result of Defendants' unconstitutional and unlawful conduct, including nominal damages;

f. Vacatur of all outstanding fines currently outstanding and assessed against each Plaintiff and others similarly situated, in accordance with Rule 8.5;

g. Plaintiffs' reasonable attorney's fees;

h. All costs of this action, including any expenses, filing fees, and/or other fees and costs; and

i. Any other relief this Court deems just and proper.

Dated: January _____, 2021

Woody Glass, OBA #15690
WARD & GLASS, LLP
1601 36th Ave NW
Norman, OK 73072
405.360.9700 DIRECT
405.360.7902 FAX
woody@wardglasslaw.com

Arthur Ago
Tianna Mays
Lawyers' Committee for Civil Rights
Under Law
1500 K Street NW, Suite 900
Washington, DC 20005
202-662-8600 DIRECT
202-783-0857 FAX
aago@lawyerscommittee.org
tmays@lawyerscommittee.org
*Pro hac vice motions forthcoming*

Jason A. Leckerman
Lisa Swaminathan
Laura E. Luisi Gavin
Izabella Babchinetskaya
Ballard Spahr LLP
1735 Market St. 51st Floor,
Philadelphia, PA 19103
215.864.8266 DIRECT
215.864.8999 FAX
LeckermanJ@ballardspahr.com
SwaminathanL@ballardspahr.com
GavinL@ballardspahr.com
BabchinetskayaI@ballardspahr.com
*Pro hac vice motions forthcoming*

*Counsel for Plaintiffs*

**Exhibit A**

| TOWN OF VALLEY BROOK 1818 SE 59 VALLEY BROOK OKLA 73129 | **WARRANT** (Felony Misdemeanors or Violations) | Warrant Number 138682 Case Number 2020 |
|---|---|---|

| Issued Date/Time 09/12/2020 13:21 Issuing Agency Valley Brook Police Department | Warrant Type Citation Number | Traffic - Filed By Citation |
|---|---|---|

| Warrant Fee $445.00 | Total Bond $223.05 | Total Amount $668.05 |
|---|---|---|

**IDENTIFICATION OF PERSON**

| Name (or Alias) HILL, KIMIESHA KEANNA | Date of Birth 09/01/1982 | Race B | Sex F | Height 6 FT. 0 in. | Weight 165 |
|---|---|---|---|---|---|
| Social Security Number | | Driver License Number | | | |
| Hair BLK | Eyes BRO | | | | |

**OFFENSE / CHARGE**

FAILURE TO OBEY/TIME PAY ...........$223.05
WARRANT............ $445.00

| Will Extradite In State [ Y ] YES   [ ] NO | Will Extradite Out State [ ] YES   [ ] NO | Night Service Authorized [ ] YES   [ ] NO |
|---|---|---|
| Served Recalled | Served Date Recalled Date | Served By Recalled By |
| Comment Served Nota: | | |

NOTE: CASH ONLY
The defendant is to be admitted to bail in the sum of ___ $668.05

_____          STEPHEN HAYNES          _____
Judge Signature                              Judge Name                              Date

**RETURN OF OFFICER**

| SHERIFF'S FEE | | Received this writ the _____ day of _____, and executed the same by |
|---|---|---|
| Arrest | $ | arresting _____ |
| Attendance on Court | $ | _____ and now have |
| Producing Prisoner | $ | bod _____ before this court. |
| Mileage (Miles) | $ | |
| Commitment | $ | |
| Other | $ | |
| Total | $ | Arresting Officer(s) |

# Exhibit B

# Graves Humphries Stahl, Ltd.
P.O. Box 1383
SulphurSprings, TX 75483
(877)-439-1900

ˡᵘᵖᵖˡˡᵘᵖˡˡⁱᵖˡⁱⁱᵖⁱˡˡⁱᵖⁱˡⁱᵖᵖˡˡⁱᵖˡⁱᵖˡⁱˡᵖ
᠁GARNETT, JASON LYNN

|  | TOWN OF VALLEY BROOK |
|  | MUNICIPAL COURT, 1 1 |
|  | AMOUNT DUE: $587.25 |

11/30/2020

| GHS ACCOUNT #: | COURT CASE #: |
| 1964293 | 138446 |

### Important Notice: Outstanding Citation

GARNETT,JASON LYNN

Do not disregard this notice. Court records indicate that you have an outstanding case(s) pending against you. We are sending this notice pursuant to Oklahoma Statute 11-22-138. Please complete the form and return this letter with any required payment(s) to the address listed below within ten (10) days.

Failure to respond and pay the amount listed may result in additional charges and/or fees against you and a warrant may be issued for your arrest. It is critical that you give this matter your immediate attention. Our toll free number is (877) 439-1900. If you believe that you have received this notice in error because of a pending appeal or for any other reason, it is imperative that you contact GHS, Ltd. immediately.

cc: Office of General Counsel

---

ENTER YOUR PLEA BELOW AND RETURN THIS ENTIRE LETTER WITH THE REQUIRED PAYMENT(s)

**Amount Due: $587.25**
Defendant: GARNETT,JASON LYNN
Driver's License: [　　　　]

*Payment must be in the form of cashier's check or money order payable to:*
**TOWN OF VALLEY BROOK MUNICIPAL COURT 1 1**
Please contact GHS, Ltd. to verify your outstanding balance. as amounts are subject to change.

You have the right to enter a plea and go to trial or you may contact the court regarding alternative payment options.If you wish to enter a plea of NOT GUILTY, you must appear in person at court. *Juveniles (16 years and younger) must appear before the court with a parent or legal guardian.*

_____A. I hereby enter a plea of GUILTY and waive my right to trial, including jury trial.
_____B. I hereby enter a plea NOLO-CONTENDERE (NO CONTEST) and waive my right to trial, including jury trial.
_____C. I have previously entered a plea or there has been a judgment against me decided by the court.

TOWN OF VALLEY BROOK
MUNICIPAL COURT 1 1
1618 SE 59TH STREET
VALLEY BROOK OK 73129

11/30/2020

GARNETT,JASON LYNN _____ DATE