# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| KIMIESHA HILL, et al., on behalf of themselves and all others similarly situated, | ) ) | |
| | ) | Case No. 5:21-cv-00097-PRW |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| TOWN OF VALLEY BROOK, et al, | ) ) | |
| Defendants. | ) ) | |

---

## PLAINTIFFS' RESPONSE IN OPPOSITION TO
## <u>DEFENDANTS' MOTION TO DISMISS</u>

**BALLARD SPAHR LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103
(215) 665-8500

**LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW**
1500 K Street NW, Suite 900
Washington, DC 20005
(202) 662-8600

**WARD & GLASS**
1601 36th Ave NW
Norman, OK 73072
(405) 253-4031

*Attorneys for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................ 1

FACTUAL BACKGROUND ...................................................................................... 3

PROCEDURAL HISTORY ........................................................................................ 7

LEGAL STANDARD .................................................................................................. 8

ARGUMENT .............................................................................................................. 9

    I.      Response to Propositions I–III: The Court has subject matter
           jurisdiction over all claims in this case. ......................................... 9

          A.    *Younger* abstention does not bar Ms. Hill's claims. ......................... 9

          B.    The *Rooker-Feldman* doctrine does not bar Mr. Garnett or
               Ms. McCorkle's claims. ................................................................ 12

          C.    *Heck v. Humphrey* does not bar any Plaintiffs' claims. ................. 14

          D.    Neither 11 O.S. § 27-129 nor the Oklahoma Uniform Post-
               Conviction Procedure Act affect Plaintiffs' claims. ...................... 17

    II.     Response to Proposition IV: Judge Haynes is not entitled to absolute
           immunity. ...................................................................................... 18

    III.    Response to Proposition V: Plaintiffs have stated plausible excessive
           fines claims. ................................................................................. 20

    IV.    Response to Proposition VI: Plaintiffs can seek to certify a class
           action in federal court. .................................................................. 23

    V.     Response to Proposition VII: Plaintiffs have named proper
           defendants. ................................................................................... 24

CONCLUSION .......................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Acosta v. Jani-King of Okla., Inc.*,
   905 F.3d 1156 (10th Cir. 2018) ..................................................................... 8

*Alverson v. Wells Fargo Bank*, *N.A.*,
   No. CIV 18-0123 JB/KBM, 2018 U.S. Dist. LEXIS 83370 (D.N.M.
   May 16, 2018) ............................................................................................... 14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ....................................................................................... 8

*Austin v. United States*,
   509 U.S. 602 (1993) ..................................................................................... 21

*Beals v. Jay*,
   No. CIV-15-922-C, 2017 U.S. Dist. LEXIS 101159 (W.D. Okla. Apr.
   10, 2017) ....................................................................................................... 19

*Beck v. City of Muskogee Police Dep't*,
   195 F.3d 553 (10th Cir. 1999) ..................................................................... 16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................... 8

*Bertrand v. Kopcow*,
   199 F. Supp. 3d 1278 (D. Colo. 2016) ........................................................ 10

*Brown v. Chappelle*,
   659 F. App'x 458 (10th Cir. 2016) .............................................................. 12

*Brown v. Reinhart*,
   760 F. App'x 175 (4th Cir. 2019) ........................................................... 19, 20

*Cain v. City of New Orleans*,
   186 F. Supp. 3d 536 (E.D. La. 2016) .................................................. 10, 13, 16

*Campbell v. City of Spencer*,
   682 F.3d 1278 (10th Cir. 2012) ................................................................... 13

*Centeno v. Facilities Consulting Grp.*,
No. 3:14-CV-3696-G, 2015 U.S. Dist. LEXIS 6362 (N.D. Tex. Jan. 20,
2015) ................................................................................................................ 23

*Cohen v. Longshore*,
621 F.3d 1311 (10th Cir. 2010) ...................................................................... 15

*Cummings v. Husted*,
795 F. Supp. 2d 677 (S.D. Ohio 2011) ...................................................... 9, 10

*DePugh v. Penning*,
888 F. Supp. 959 (N.D. Iowa 1995).................................................................. 16

*Estes v. Poffel*,
No. CIV 14-141-RAW-SPS, 2014 U.S. Dist. LEXIS 56830 (E.D. Okla.
Apr. 22, 2014) .................................................................................................. 25

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
544 U.S. 280 (2005)........................................................................................ 12

*Fant v. City of Ferguson*,
107 F. Supp. 3d 1016 (E.D. Mo. 2015)........................................................... 16

*Feenstra v. Sigler*,
No. 19-CV-00234-GKF-FHM, 2019 U.S. Dist. LEXIS 197889 (N.D.
Okla. Nov. 14, 2019)................................................................................... 15, 17

*Forrester v. White*,
484 U.S. 219 (1988) ........................................................................................ 19

*Gerstein v. Pugh*,
420 U.S. 103 (1975)......................................................................................... 11

*Heck v. Humphrey*,
512 U.S. 477 (1994) ................................................................................*passim*

*J.B. v. Valez*,
186 F.3d 1280 (10th Cir. 1999) ...................................................................... 10

*Jureli, LLC v. Schaefer*,
53 F. Supp. 3d 552 (E.D.N.Y. 2014) .............................................................. 10

*Kenny A. v. Perdue*,
218 F.R.D. 277 (N.D. Ga. 2003)........................................................................ 9

*Kiowa Indian Tribe of Okla. v. Hoover*,
  150 F.3d 1163 (10th Cir. 1998) .................................................................. 13

*Kneisser v. McInerney*,
  No. 1:15-cv-07043-NLH-AMD, 2018 U.S. Dist. LEXIS 55389 (D.N.J.
  Mar. 30, 2018).......................................................................................... 20, 25

*Lenz v. Town of Carney*,
  No. CIV-13-1026-C, 2014 U.S. Dist. LEXIS 12650 (W.D. Okla. Feb. 3,
  2014) ............................................................................................................... 25

*Market v. City of Garden City*,
  723 F. App'x 571 (10th Cir. 2017) ............................................................ 14

*Marso v. Safespeed*,
  No. 19-2671-KHV, 2020 U.S. Dist. LEXIS 138042 (D. Kan. Aug. 4,
  2020) ............................................................................................................... 23

*Mayotte v. U.S. Bank Nat'l Ass'n*,
  880 F.3d 1169 (10th Cir. 2018) .................................................................. 12

*McDowell-Jacobs v. Huebner*,
  No. 06-2269-KHV-GLR, 2006 U.S. Dist. LEXIS 65072 (D. Kan. Sept.
  12, 2006) ........................................................................................................ 21

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*,
  457 U.S. 423 (1982).................................................................................. 10, 11

*Mireles v. Waco*,
  502 U.S. 9 (1978)........................................................................................... 18

*Oxendine v. Kaplan*,
  241 F.3d 1272 (10th Cir. 2001) ................................................................... 7

*Parga v. Bd. of Cty. Comm'rs of Tulsa*,
  No. 18-CV-0298-CVE-JFJ, 2019 U.S. Dist. LEXIS 42510 (N.D. Okla.
  Mar. 15, 2019)........................................................................................... 19, 20

*Powers v. Hamilton Cty. Pub. Def. Comm'n*,
  501 F.3d 592 (6th Cir. 2007) ...................................................................... 16

*Pueblo of Jemez v. United States*,
  790 F.3d 1143 (10th Cir. 2014) ................................................................ 7, 8

*Pueblo of Santa Ana v. Nash*,
854 F. Supp. 2d 1128 (D.N.M. 2012) .......................................................... 19

*Ray v. Judicial Corr. Servs.*,
No. 2:12-CV-02819-RDP, 2013 U.S. Dist. LEXIS 139470 (N.D. Ala.
Sep. 26, 2013) ............................................................................................. 15

*Rodriguez v. Providence Cmty. Corr., Inc.*,
155 F. Supp. 3d 758 (M.D. Tenn. 2015) ....................................................... 11

*Sanders v. Kan. Dep't of Soc. & Rehab Servs.*,
317 F. Supp. 2d 1233 (D. Kan. 2004) ........................................................... 10

*Stump v. Sparkman*,
435 U.S. 349 (1978) ..................................................................................... 19

*Switzer v. Coan*,
261 F.3d 985 (10th Cir. 2001) ...................................................................... 19

*Taylor v. City of Bixby*,
No. 12-CV-0066-CVE-FHM, 2012 U.S. Dist. LEXIS 174464 (N.D.
Okla. Dec. 10, 2012) .................................................................................... 15

*Timbs v. Indiana*,
139 S. Ct. 682 (2018) ................................................................................... 21

*Tucker v. BP Am. Prod. Co.*,
278 F.R.D. 646 (W.D. Okla. 2011) ............................................................... 23

*United States v. Bajakajian*,
524 U.S. 321 (1998) ..................................................................................... 21

*United States v. Locke*,
471 U.S. 84 (1985) ......................................................................................... 8

*United States v. Nacchio*,
573 F.3d 1062 (10th Cir. 2009) .................................................................... 22

*United States v. Valencia*,
No. CR 12-3182 JB, 2015 U.S. Dist. LEXIS 175087 (D.N.M. Dec. 31,
2015) ........................................................................................................... 21

*Venta, Inc. v. Frontier Oil & Ref. Co.*,
827 F. Supp. 1526 (D. Colo. 1993) ............................................................... 23

iv

*Ward v. City of Norwalk*,
  640 F. App'x 462 (6th Cir. 2016) ................................................................ 24

*Webb v. Okla. Dep't of Human Servs.*,
  No. CIV-11-134 JHP, 2012 U.S. Dist. LEXIS 311 (E.D. Okla. Jan. 3,
  2012) .......................................................................................................... 18

*West v. City of Santa Fe.*,
  No. 3:16-CV-0309, 2018 U.S. Dist. LEXIS 144012 (S.D. Tex. Aug. 16,
  2018) .......................................................................................................... 13

*Wheelahan v. City of New Orleans*,
  No. 19-11720, 2020 U.S. Dist. LEXIS 54571 (E.D. La. Mar. 30, 2020) ................... 22

*Wright v. Riveland*,
  219 F.3d 905 (9th Cir. 2000) ...................................................................... 21

*Younger v. Harris*,
  401 U.S. 37 (1971). ....................................................................... 2, 9, 10, 11

*Zuckman v. Monster Bev. Corp.*,
  958 F. Supp. 2d 293 (D.D.C. 2013) .............................................................. 24

**State Cases**

*Daniels v. State*,
  No. PC-2O16-1175, 2017 Okla. Crim. App. LEXIS 28 (Okla. Crim.
  App. 2017) .................................................................................................. 18

*Dutton v. City of Midwest City*,
  353 P.3d 532 (Okla. 2015) .......................................................................... 18

*Maldonado v. Town of Valley Brook*,
  No. CJ-2011-89, 2012 Okla. Dist. LEXIS 5840 (Okla. Dist. Ct. Sept. 6,
  2012) .......................................................................................................... 24

**Constitutional Provisions**

U.S. CONST. amend. IV ........................................................................ 7, 13, 16

U.S. CONST. amend. VIII ................................................................. *passim*

U.S. CONST. amend. XIV .......................................................................... 21

**Federal Statutes**

42 U.S.C. § 1983 ....................................................................................*passim*

**Other Authorities**

FED. R. CIV. P. 15 ............................................................................. 24

FED. R. CIV. P. 12 ........................................................................... 7, 8

FED. R. CIV. P. 23 ........................................................................ 23, 24

Okla. Crim. App. Rule 8 ................................................................... 5, 6

Plaintiffs Kimiesha Hill, Jason Garnett, and Kiara McCorkle ("Plaintiffs"), by and through their undersigned counsel, respectfully submit this Response in Opposition to the Motion to Dismiss ("motion") filed by Defendants the Town of Valley Brook, the Valley Brook Municipal Court, Judge Stephen Haynes, Mayor Lewis Nieman, Police Chief Michael Stamp, and the Valley Brook Police Department (together, the "Defendants").

## INTRODUCTION

The Town of Valley Brook, its agencies, and officials have perpetrated the contemporary equivalent of a debtors' prison in violation of the United States and Oklahoma constitutions. Plaintiffs were jailed by Valley Brook solely because they could not pay municipal fines. Each was arrested by the Valley Brook Police Department, charged with minor municipal offenses, and jailed for nearly a week before their first court appearances because they could not afford an arbitrary sum for release. Each then pleaded guilty or no contest to charges before the Valley Brook Municipal Court and was ordered to pay municipal fines in full immediately. Each explained that he or she could not afford these fines. Under federal and state law, these Plaintiffs were entitled to an ability-to-pay determination, which they never received. Instead, they were re-jailed or threatened with jail simply because they could not afford the fines imposed against them.

Based on these experiences, Plaintiffs bring various federal and state constitutional claims against Defendants. For the most part, Defendants, in their motion, do not dispute that the facts as alleged support the merits of Plaintiffs' claims. Defendants, instead, argue, citing virtually no supportive case law, that a mishmash of abstention and immunity doctrines prevent this Court from protecting Plaintiffs' constitutional rights.

Defendants first argue that three federal doctrines—*Younger v. Harris*, *Rooker-Feldman*, and *Heck v. Humphrey*—bar Plaintiffs' claims, and that Plaintiffs fatally "failed" to seek redress in state court.  *Younger* does not provide grounds to dismiss because the requirements for abstention are not met (and Defendants also have waived—and therefore should be estopped from making—this argument).  As this Court is aware, Plaintiffs filed this case in state court and Defendants removed it to this venue.  Defendants should not now be permitted to argue that this is the wrong forum for this case.  *Rooker-Feldman* is also inapplicable because the claims do not seek to modify or set aside any state-court judgments.  *Heck* does not apply because a ruling in Plaintiffs' favor will not contradict or undermine the factual findings underlying Plaintiffs' convictions.  Even if the Court were to set aside Defendants' removal decision, each of these arguments fails for the same reason:  Plaintiffs are not challenging their convictions or judgments. They are challenging the *process* (or lack thereof) by which Defendants collect municipal judgments from individuals who raise ability to pay as an issue.  The related state law arguments that Defendants raise—appellate relief under 11 O.S. § 27-129 and post-conviction relief under Oklahoma Uniform Post-Conviction Procedure Act ("OUPCPA")—are also inapplicable as they apply only where parties challenge their conviction or sentence.

Defendants' additional arguments fare no better.  Judge Haynes is not immune from suit.  To the contrary, case law makes clear that claims for declaratory relief against Judge Haynes are available, and that he is not immune from claims for monetary relief based upon administrative acts, like those alleged here.  Defendants also insist that Plaintiffs' "request to certify a class" must be dismissed because Plaintiffs stated their intention to

pursue a class action under procedural rules applicable when the case was filed. But Defendants offer no support for that argument, which is nevertheless misguided.

The Court also should reject Defendants' argument that Plaintiffs have failed to state an excessive fines claim because they did not identify the precise amount of fines paid. Plaintiffs pleaded sufficient facts, describing the amounts at issue, putting Defendants—who no doubt know the amount they fined Plaintiffs—on notice as to the basis for Plaintiffs' claim.

Finally, Defendants contend that two of the six Defendants—the Valley Brook Municipal Court and the Valley Brook Police Department—are improper defendants because they are sub-governmental entities. Yet Defendants concede that under Oklahoma law, the government itself (Valley Brook)—which has also been named as a Defendant—can properly be sued (and Plaintiffs are willing to proceed on that basis).

Because Defendants have failed to raise a viable challenge to any of Plaintiffs' claims, the Court should deny their motion to dismiss and allow Plaintiffs to proceed to discovery.

## FACTUAL BACKGROUND

In early 2020, the Valley Brook Police Department separately stopped, arrested, and charged Plaintiffs with traffic and other minor municipal offenses. (Am. Compl. ¶¶ 17, 40, 58, ECF No. 1-5.) Valley Brook police officers initially stopped Ms. Hill for allegedly driving with a broken taillight, Mr. Garnett for speeding, and Ms. McCorkle for loitering in a parking lot (where she had just parked). (*Id.* at ¶¶ 17, 40, 58–59.) During these stops, Valley Brook police officers searched Ms. Hill and Ms. McCorkle's vehicles without their

consent or any indication of wrongdoing.  (*Id.* at ¶¶ 19, 61.)

Upon arrest, Valley Brook police officers took each Plaintiff to the Valley Brook Police Station and ordered them to pay hundreds or thousands of dollars, without any explanation, to be released.  (*Id.* at ¶¶ 20, 41, 62.)  Because Plaintiffs did not have the ability to pay these funds, the police officers told them to contact pre-approved bail bondsmen, friends, or family to obtain the full amount.  (*Id.* at ¶¶ 21, 42, 63.)  When Plaintiffs could not find anyone to pay the full amount on their behalf, Valley Brook police officers transferred them to the Oklahoma County jail.   (*Id.* at ¶¶ 22, 43, 64.)  Ms. McCorkle remained in jail for four days, Ms. Hill for five days, and Mr. Garnett for a week, without a hearing.  (*Id.*)

Each Plaintiff eventually appeared before Defendant Judge Haynes at a weekly court session, alongside dozens of other municipal defendants.  (*Id.* at ¶¶ 24–25, 45, 66.) Before hearing any individual cases, but while all defendants were in the courtroom, Judge Haynes informed all municipal defendants that if they pleaded guilty or no contest to municipal charges, they would be required to pay municipal fines in full before the end of the court session or else be sent to jail.  (*See, e.g.*, *id.* at ¶¶ 25, 46.)  While municipal defendants could complete a "time payment application" to request a periodic payment schedule as an alternative to payment in full, Judge Haynes made clear that he would not grant those applications.  (*Id.* at ¶ 25.)  Instead, he advised them to speak with the City Attorney about their fines.  (*Id.* at ¶ 26.)[1]  All Plaintiffs saw Valley Brook Mayor Lewis

_____

[1] Judge Haynes has indicated that his time payment practices vary depending on the municipality in which he sits.  (*See* Am. Compl. ¶¶ 111–12.)

Nieman interacting with various municipal defendants and court staff, including Judge Haynes, and/or handing out time payment applications during these proceedings. (*Id.* at ¶¶ 27, 47, 67–68.) Even with the threat of imprisonment for failure to pay municipal fines, no Plaintiff was advised of their right to counsel or appointed counsel. (*See, e.g.*, *id.* at ¶¶ 32, 45, 104.)

Before their respective hearings, Ms. Hill and Mr. Garnett spoke with the City Attorney, who calculated their total respective fines as hundreds or thousands of dollars, without any explanation or breakdown. (*Id.* at ¶¶ 28, 48.) Ms. McCorkle spoke with Mayor Nieman, who advised her to obey Judge Haynes, and a police officer, who recommended she plead guilty to stay on Judge Haynes's "good side." (*Id.* at ¶¶ 68–69.) Thereafter, all Plaintiffs pleaded either guilty or no contest before Judge Haynes. (*Id.* at ¶¶ 29, 49, 70.) He immediately ordered each Plaintiff to pay hundreds or thousands of dollars of fines in full. (*Id.*) Without prompting from Judge Haynes, Ms. Hill and Ms. McCorkle, both unemployed single mothers, explained that they could not afford their fines. (*Id.* at ¶¶ 30, 71.) Mr. Garnett, unemployed and recently injured in a motorcycle accident, also could not afford his fines. (*Id.* at ¶ 50.)

Rule 8 of the Oklahoma Court of Criminal Appeals required the municipal court to hold a "Rule 8 hearing" to evaluate these Plaintiffs' financial circumstances and consider reasonable payment alternatives. (*Id.* at ¶ 4.) Instead, each Plaintiff was given one choice: pay the full amount or go back to jail. (*See, e.g.*, *id.* at ¶¶ 30, 71.) Judge Haynes detained each Plaintiff in the courtroom, going so far as to direct Ms. Hill and Ms. McCorkle to call family and friends for money. (*See, e.g.*, *id.*) While detained, Ms. Hill and Mr. Garnett

completed time payment applications, describing their financial circumstances. (*Id.* at ¶¶ 31, 50.)  Ms. McCorkle also requested a time payment application from Mayor Nieman, but he refused her request. (*Id.* at ¶ 72.)

In the end, Ms. McCorkle borrowed money from her sister to avoid imprisonment. (*Id.* at ¶ 74.)  Ms. Hill and Mr. Garnett submitted time payment applications, but no one addressed the contents. (*Id.* at ¶¶ 32, 50–51.)  No Plaintiff received a Rule 8 hearing or any order describing findings with respect to their ability to pay. (*Id.* at ¶¶ 32, 51, 73.)  No Plaintiff was provided an attorney or informed of their right to request or obtain an attorney. (*See, e.g.*, *id.* at ¶¶ 32, 45, 104.)  Ms. Hill was sent back to jail for five more days, and Mr. Garnett was sent back to jail for four more days.[2] (*Id.* at ¶¶ 33, 52.)  Although her sister paid her fines, Ms. McCorkle also went back to jail for nearly twelve hours before being released. (*Id.* at ¶ 75.)  Both Ms. Hill and Ms. McCorkle lost their jobs while in prison and were forced to spend days away from their young children. (*Id.* at ¶¶ 34, 38, 77.)

Ms. Hill and Mr. Garnett still owe municipal fines in connection with their charges, while Ms. McCorkle believes she still owes "pay-for-stay" costs to Oklahoma County jail (i.e., daily fees imposed on defendants to cover the cost of their jail stay). (*Id.* at ¶¶ 33, 55, 76.)  In June 2020, Ms. Hill received a notice informing her that she also owes $223.05 for "failure to obey/time pay" (which was never granted) and $445.00 for "warrant." (*See* Am.

---

[2] Mr. Garnett was also sentenced to probation. (*See* Am. Compl. ¶ 54.)  Upon information and belief, Valley Brook requires municipal defendants who are sentenced to probation to pay a probationary fee, even though no one oversees or monitors the municipal defendant's probation. (*See, e.g.*, *id*. at ¶¶ 108, 177.)  Mr. Garnett also alleges that Mayor Nieman told him he would be going back to jail. (*See id.* at ¶ 51.)

Compl., Ex. A.)³  She is awaiting a hearing date in which she will be required to pay the full amount of her outstanding debts.  (*Id.* at ¶ 35.)  In December 2020, Mr. Garnett received a citation from a collection agency, indicating that he still owes $587.25 in fines, without any breakdown.  (*See* Am. Compl., Ex. B.)  Plaintiffs still cannot pay these amounts.  (*See, e.g.*, *id.* at ¶¶ 37, 56.)

## PROCEDURAL HISTORY

Based on these events, Plaintiffs initiated this action in the District Court of Oklahoma County, bringing due process claims against the various Defendants under both the United States and Oklahoma constitutions (Counts I–IV and VI).  (*Id.*)  Plaintiffs also state an excessive fines claim under the Eighth Amendment to the United States Constitution against all Defendants (Count V), and Ms. Hill and Ms. McCorkle state an unreasonable search claim under the Fourth Amendment to the United States Constitution against the Valley Brook, Police Chief Michael Stamp, and the Valley Brook Police Department (Count VII).  (*Id.*)  All Plaintiffs seek damages, including nominal damages.  (*Id.* at Prayer for Relief.)  Ms. Hill and Mr. Garnett also seek declaratory relief against all Defendants and injunctive relief against all Defendants except Judge Haynes.  (*Id.*)

Defendants removed to this Court on February 9, 2021, and filed an unopposed motion for additional time to plead or otherwise respond on February 15, 2021, which the

---

³ The court may consider documents referenced in the complaint and attached thereto.  *See Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148 n.4 (10th Cir. 2014) (citing standard for Rule 12(b)(1) motions); *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) (citing standard for Rule 12(b)(6) motions).

Court granted.  (Notice of Removal, ECF No. 1; Defs.' Mot. Additional Time to Plead, ECF No. 5; Order, ECF No. 6.)  While Defendants' response was due February 24, 2021, they filed this motion on February 25, 2021.[4]  (Order; Defs.' Mot. Dismiss, ECF No. 7.)

**LEGAL STANDARD**

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a court to dismiss all or part of a case for lack of subject matter jurisdiction.  FED. R. CIV. P. 12(b)(1).  When reviewing a facial challenge to jurisdiction under Rule 12(b)(1), a court must consider the allegations of the complaint in the light most favorable to the plaintiff.  *Pueblo of Jemez*, 790 F.3d at 1147–48.

Rule 12(b)(6) permits a court to dismiss all or part of an action "for failure to state a claim upon which relief can be granted," FED. R. CIV. P. 12(b)(6), but not if, as here, it "contain[s] sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim has "facial plausibility" when the pleaded "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Acosta v. Jani-King of Okla., Inc.*, 905 F.3d 1156, 1158 (10th Cir. 2018).

---

[4] Because Defendants missed the filing deadline, this Court should deny their motion as untimely.  *Cf. United States v. Locke*, 471 U.S. 84, 100–01 (1985) ("A filing deadline cannot be complied with, substantially or otherwise, by filing late—even by one day.").

## ARGUMENT

**I.    Response to Propositions I–III: The Court has subject matter jurisdiction over all claims in this case.**

Defendants first argue that several federal doctrines—*Younger*, *Rooker-Feldman*, and *Heck*—bar Plaintiffs' claims and that Plaintiffs should have first sought relief for their claims in state court. Plaintiffs, of course, first filed these claims in state court. Defendants nowhere address why this Court should nevertheless permit them these defenses after they removed to federal court. In short, Defendants should be estopped from arguing that this case should be dismissed because it was not brought in state court. Still, as described below, these arguments fail for the same reason: Plaintiffs are not challenging their convictions or judgments; they are challenging the *process* (or lack thereof) by which Defendants collect judgments. The Court has jurisdiction over each of Plaintiffs' claims.

### A.    *Younger* abstention does not bar Ms. Hill's claims.

Defendants contend that Ms. Hill's claims are barred under *Younger v. Harris*, 401 U.S. 37 (1971). (*See* Defs.' Mot. 6–7.) As an initial matter, courts have held that defendants waive their right to seek *Younger* abstention when they voluntarily remove a case to federal court because holding otherwise would effectively prevent "plaintiffs from pursuing their federal claims in any forum." *Kenny A. v. Perdue*, 218 F.R.D. 277, 285 (N.D. Ga. 2003) (explaining that defendants waived their right to seek abstention because defendants removed the case to federal court); *see also Cummings v. Husted*, 795 F. Supp. 2d 677, 692 (S.D. Ohio 2011) ("[T]he *Younger* abstention defense is waived when an action is removed from state court and federal jurisdiction is thereby invoked by the defendant.").

Holding otherwise would create a loophole in which defendants could simply evade review through the removal process—a result that would be fundamentally unjust.  *See id.*[5]

Even if Defendants did not waive or are not otherwise estopped from pursuing their *Younger* argument, abstention is not appropriate.  *Younger* stands for the principle that federal courts may not enjoin pending state court proceedings.  *Id.* at 42.  Under *Younger*, federal courts should abstain when federal proceedings would (1) interfere with an ongoing state judicial proceeding (2) that implicates important state interests and (3) that affords an adequate opportunity to raise the federal claims.  *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).  "A case warrants *Younger* abstention only if [all] three criteria are [met]."  *Sanders v. Kan. Dep't of Soc. & Rehab Servs.*, 317 F. Supp. 2d 1233, 1240 (D. Kan. 2004) (citing *J.B. v. Valez*, 186 F.3d 1280, 1291 (10th Cir. 1999)).

Defendants argue that *Younger* requires this Court to abstain from deciding Ms. Hill's claims for the sole reason that her criminal case is purportedly "still pending."  (*See* Defs.' Mot. 7.)  But that argument is not correct.  As alleged, Ms. Hill's criminal case is not "still pending": Ms. Hill has already been convicted and sentenced.  (*See* Am. Compl. at ¶ 29.)  While she still owes fines, courts have ruled that "an incomplete sentence, such as an undischarged term of imprisonment, probation, or parole, does not constitute an 'ongoing state judicial proceeding' for purposes of *Younger* abstention."  *See Cain v. City of New Orleans*, 186 F. Supp. 3d 536, 549-550 (E.D. La. 2016) (citing cases); *cf. Bertrand v. Kopcow*, 199 F. Supp. 3d 1278, 1282 (D. Colo. 2016) ("Defendants offer no authority to

---

[5] Even if *Younger* applied, remand, not dismissal, is the more appropriate course of action. *See, e.g.*, *Jureli, LLC v. Schaefer*, 53 F. Supp. 3d 552, 561 (E.D.N.Y. 2014).

support the notion that a criminal proceeding is 'ongoing' for the entire duration of a convict's sentence.  The Court is likewise unaware of any such authority, nor is it a natural construction of the word 'ongoing.'")  For this reason, Ms. Hill's case cannot satisfy the first *Younger* requirement.

Nor are other *Younger* requirements met.  For instance, Ms. Hill's state court proceedings did not afford an adequate opportunity to raise her constitutional claims.  *See Middlesex Cnty. Ethics Comm.*, 457 U.S. at 432.  "[W]hen it comes to the adequacy of the state court proceedings as an opportunity to address constitutional harms, the opportunity must be available *before* the harm is inflicted."  *Rodriguez v. Providence Cmty. Corr., Inc.*, 155 F. Supp. 3d 758, 766 (M.D. Tenn. 2015) (citing *Gerstein v. Pugh*, 420 U.S. 103 (1975)).  Here, Defendants failed to inquire into Ms. Hill's ability to pay before jailing her for non-payment of fines and made no determination with respect to her ability to pay that she could have appealed or otherwise contested.  In fact, Ms. Hill, on her own, raised her inability to pay the fines imposed, which was ignored by Judge Haynes.  (Am. Compl. at ¶ 30.)  "By that point, the constitutional harm alleged, a liberty deprivation absent an inquiry into [ability to pay], ha[d] already occurred."  *Rodriguez*, 155 F. Supp. 3d  at 766.  As a result, Ms. Hill's case also cannot satisfy the second *Younger* criteria.

Because Ms. Hill's case fails to satisfy requirements for *Younger* abstention, this Court should not abstain from hearing her claims.  Accordingly, Defendants' motion to dismiss under *Younger* must be denied.

11

B.    **The *Rooker-Feldman* doctrine does not bar Mr. Garnett or Ms. McCorkle's claims.**

Defendants next argue that the *Rooker-Feldman* doctrine bars claims brought by Mr. Garnett and Ms. McCorkle.  (*See* Defs.' Mot. 5–6.)  That doctrine bars "federal action[s] that try to *modify* or *set aside* a state-court judgment[.]"  *Mayotte v. U.S. Bank Nat'l Ass'n*, 880 F.3d 1169, 1174 (10th Cir. 2018) (citation omitted).  As the Tenth Circuit has held, "this doctrine is narrow [and] . . . 'is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'"  *Brown v. Chappelle*, 659 F. App'x 458, 459 n.1 (10th Cir. 2016) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).  "*Rooker-Feldman* does not deprive a federal court of jurisdiction to hear a claim just because it could result in a judgment inconsistent with a state-court judgment."  *Mayotte*, 880 F.3d at 1174.

Defendants argue that Mr. Garnett and Ms. McCorkle "are challenging [their] municipal judgments of conviction."  (Defs.' Mot. 6.)  That is simply not true.  Mr. Garnett and Ms. McCorkle are not contesting the validity of their state-court convictions, sentences, or judgments.  Nor are they asking this Court to overturn those convictions, sentences, or judgments.  Rather, they are challenging the *process* by which Defendants have and continue to collect Plaintiffs' judgments, without any consideration of their ability to pay.  Courts have recognized that this is "an issue separate and distinct from the validity of the judgment itself" because it does not require federal courts to "review, modify, or nullify, a

final order of a state court." *Cain*, 186 F. Supp. 3d at 553; *see also West v. City of Santa Fe.*, No. 3:16-CV-0309, 2018 U.S. Dist. LEXIS 144012, at *14 (S.D. Tex. Aug. 16, 2018) ("*Rooker-Feldman* . . . does not preclude a claim, such as the one raised in this case, concerning the constitutionality of customs or practices utilized to enforce judgments." (citation omitted)); *cf. Kiowa Indian Tribe of Okla. v. Hoover*, 150 F.3d 1163, 1170 (10th Cir. 1998) ("[A]sking a federal court to enjoin post-judgment collection procedures that allegedly violate a party's federal rights is distinguishable from asking a federal court to review the merits of the underlying judgment.").[6]

Further, Defendants ignore that Mr. Garnett—who contrary to Defendants' assertion owes outstanding fines (Am. Comp. ¶ 55)—seeks prospective relief for his claims. *Rooker-Feldman* does not apply to "claims for 'prospective injunctive and

---

[6] Defendants' arguments appear to focus solely on Plaintiffs' § 1983 due process claims. To be clear, however, *Rooker-Feldman* also does not apply to Plaintiffs' other § 1983 claims, including those under the Fourth and Eighth Amendments. The Tenth Circuit has held that *Rooker-Feldman* does not bar Fourth Amendment claims where the plaintiff "could raise the same claims even if there had been no state-court proceedings." *Campbell v. City of Spencer*, 682 F.3d 1278, 1285 (10th Cir. 2012). Here, Ms. McCorkle alleges that Valley Brook police officers improperly searched her car. (*See* Am. Compl. ¶ 198). These unconstitutional acts preceded any judgment by the municipal court.

While the Tenth Circuit has ruled that *Rooker-Feldman* bars Eighth Amendment claims when fines are "the content of the judgment," *see Campbell*, 682 F.3d at 1285, Plaintiffs are not challenging the content of their judgments. Rather, they are challenging the arbitrary assessment of a variety of fines. *Cf. Campbell*, 682 F.3d at 1285 (suggesting that *Rooker-Feldman* does not bar Eighth Amendments claims based on allegations that a town imposed an excessive fine, or some act by a defendant that led to the judgment). However, even if Plaintiffs' Eighth Amendment claim could be read to challenge the contents of Plaintiffs' judgments, this would not affect Plaintiffs' other claims, which challenge the process by which Defendants enforce and collect judgments.

declaratory relief' . . . even when litigation could result in contradictory state-court and federal court decisions, '[b]ecause the prospective relief requested . . . would not undo the penalties imposed by the state[-]court judgment.'" *See Market v. City of Garden City*, 723 F. App'x 571, 574 (10th Cir. 2017) (citation omitted). Defendants' arguments against Mr. Garnett's claims thus fail for this additional reason.

Because Mr. Garnett and Ms. McCorkle are solely challenging Defendants' practices in enforcing state court judgments, rather than the judgments themselves, this Court has subject matter jurisdiction over their claims. Accordingly, Defendants' motion to dismiss their claims on this basis must be denied.[7]

### C. *Heck v. Humphrey* does not bar any Plaintiffs' claims.

Defendants next contend that Plaintiffs' § 1983 claims are precluded by *Heck v. Humphrey*, 512 U.S. 477 (1994). (*See* Defs.' Mot. 8–10.) Defendants contend that Plaintiffs' § 1983 claims must be dismissed under *Heck* because Plaintiffs' convictions are still intact and granting judgment in their favor (i.e., vacating their outstanding fines and issuing other declaratory and equitable relief) will impermissibly negate those convictions. (*See* Defs.' Mot. 9 (citing *Heck*, 512 U.S. at 487).) That is not correct. Once again, Defendants wholly mischaracterize Plaintiffs' claims and requests for relief. Plaintiffs are not challenging their convictions or judgments, but the unconstitutional process by which

---

[7] Even if the Court were to apply *Rooker-Feldman*, the appropriate course of action is to remand—not dismiss—claims, particularly when the defendant removed the action to federal court. *See, e.g.*, *Alverson v. Wells Fargo Bank, N.A.*, No. CIV 18-0123 JB/KBM, 2018 U.S. Dist. LEXIS 83370, at *19 (D.N.M. May 16, 2018), *adopted by* 2018 U.S. Dist. LEXIS 92869 (D.N.M. May 31, 2018).

Defendants *enforce* those judgments.

In *Heck*, the Supreme Court held that "to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a plaintiff must show that the underlying conviction was, in fact, invalid. *Id.* at 486–87.  Applying this rule, the Court explained that a "complaint must be dismissed" if a judgment in favor of the plaintiff would "imply the invalidity of [an intact] conviction or sentence." *Id.*  The complaint should proceed, however, if "the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff," absent "some other bar to the suit." *Id.*[8]

*Heck*, therefore, applies only when the facts necessary to establish a claim would contradict or undermine the factual findings underlying a criminal conviction. *Heck*, 512 U.S. at 487 n.6.  Applying this standard, numerous courts—including a district court in this Circuit—have allowed constitutional challenges to incarceration for non-payment of fines (like those alleged here) to proceed because such challenges do not implicate underlying convictions. *See Feenstra v. Sigler*, No. 19-CV-00234-GKF-FHM, 2019 U.S. Dist. LEXIS

---

[8] *Heck* is meant to prevent the use of §1983 to challenge convictions when habeas relief is available.  512 U.S. at 480–84.  *Heck* does not bar § 1983 claims where, as here, habeas corpus relief is unavailable.  *See Cohen v. Longshore*, 621 F.3d 1311, 1317 (10th Cir. 2010).  Habeas relief is not available to individuals like Plaintiffs who are no longer in prison.  *See, e.g., Ray v. Judicial Corr. Servs.*, No. 2:12-CV-02819-RDP, 2013 U.S. Dist. LEXIS 139470, at *29 (N.D. Ala. Sep. 26, 2013).  Plaintiffs also were not in prison long enough to pursue habeas relief.  *See Taylor v. City of Bixby*, No. 12-CV-0066-CVE-FHM, 2012 U.S. Dist. LEXIS 174464, at *24 (N.D. Okla. Dec. 10, 2012) (explaining that plaintiff's ten-day imprisonment precluded a habeas remedy).

197889, at *19 (N.D. Okla. Nov. 14, 2019) ("[C]ourts in other circuits have held that *Heck* does not bar suits challenging incarceration for failure to pay fines and fees in the absence of an ability-to-pay hearing."); *see also, e.g.*, *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 604 (6th Cir. 2007) (declining to apply *Heck* because if plaintiff succeeded, it would "mean[] only that the failure to grant [the plaintiff] an indigency hearing was wrongful, not that the order committing him to jail was wrongful"); *Cain*, 186 F. Supp. 3d at 548 ("Defendants cannot seriously argue that the facts necessary to support plaintiffs' section 1983 claims (i.e., the Criminal District Court judges' failing to conduct a sufficient inquiry in to the criminal defendants' good-faith ability to pay) contradict or undermine the factual bases for plaintiffs' state-court guilty pleas[.]"); *Fant v. City of Ferguson*, 107 F. Supp. 3d 1016, 1029 (E.D. Mo. 2015) (ruling that *Heck* did not apply where plaintiffs were not challenging "the fact or duration of their underlying convictions, but only the improper procedures that culminated in their post judgment incarceration").[9]

---

[9] Defendants' arguments again appear to focus only on Plaintiffs' § 1983 due process claims.  Yet, to be clear, *Heck* also does not apply to Plaintiffs' § 1983 claims under the Fourth and Eighth Amendments.  With respect to the Fourth Amendment, Plaintiffs seek nominal damages for their claims.  (Am. Compl., Prayer for Relief); *see DePugh v. Penning*, 888 F. Supp. 959, 981 (N.D. Iowa 1995) ("*Heck* says nothing whatsoever about the viability of a civil rights plaintiff's claims based on lack of actual, compensable injury" (citation omitted)).  *Heck* also does not apply to Fourth Amendment claims, where, as here, the issue of whether defendants violated a plaintiff's rights does not question the validity of the plaintiff's conviction.  *See, e.g.*, *Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 557–59 (10th Cir. 1999); *cf. Heck*, 512 U.S. at 487 n.7 ("[A] suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction[.]").

*Heck* also does not bar Plaintiffs' Eighth Amendment claim because Plaintiffs are not challenging their convictions or judgments, but Defendants' arbitrary assessment of a

Because Plaintiffs challenge Defendants' process of enforcing judgments, not the judgments themselves, *Heck* does not preclude Plaintiffs' claims. *Cf. Feenstra*, 2019 U.S. Dist. LEXIS 197889, at *20. Accordingly, Defendants' motion to dismiss Plaintiffs' claims based on *Heck* must be denied.

> **D.    Neither 11 O.S. § 27-129 nor the Oklahoma Uniform Post-Conviction Procedure Act affect Plaintiffs' claims.**

Defendants also appear to argue that this Court lacks jurisdiction over Plaintiffs' claims because Plaintiffs did not "seek any type of state court redress" for their claims, such as appellate relief under 11 O.S. § 27-129 or post-conviction relief under Oklahoma Uniform Post-Conviction Procedure Act ("OUPCPA"), 22 O.S. §§ 1080, *et seq.* (*See* Defs.' Mot. 7–8.) Defendants do not explain how this argument differs from their *Heck* argument, as both rely on the availability of state or habeas remedies. In any event, Defendants' also predicate this argument on a mischaracterization of Plaintiffs' allegations. Again, Plaintiffs are not—as Defendants suggest—"contest[ing] their municipal [convictions,] judgments, and sentences." (Defs.' Mot. 8.) They are challenging the process by which Defendants enforce those judgments.

Defendants do not identify any authority indicating that 11 O.S. § 27-129 and/or 22 O.S. §§ 1080, *et seq.* apply in these circumstances; nor could they. The appellate provision, 11 O.S. § 27-129, provides that "[a]n appeal may be taken *from a final judgment of the*

---

variety of fines. *See supra* note 6. A ruling in Plaintiffs' favor on this issue will not contradict or undermine any element of their convictions. *See Heck*, 512 U.S. at 487 n.6.

*municipal court*[.]" 11 O.S. § 27-129(A) (emphasis added).[10]   Similarly, the OUPCPA states that persons who have been convicted of or sentenced for a crime "may institute a proceeding under this act" to challenge their conviction or sentence.   22 O.S. §§ 1080; *see also Daniels v. State*, No. PC-2O16-1175, 2017 Okla. Crim. App. LEXIS 28, *3 (Okla. Crim. App. 2017) ("Generally 'the [OUPCPA] applies only to challenges to the original conviction and imposition of sentence.'" (internal citation omitted)).   Neither of these statutes require plaintiffs challenging the means by which defendants enforce judgments to seek relief in state court.   *Cf. Dutton v. City of Midwest City*, 353 P.3d 532, 543 (Okla. 2015) (noting that adjudications involving "alleged institutional deficienc[ies] and the proper functioning of a governmental entity . . . do not include an adjudication of a defendant's criminal offense[.]")   Thus, the Court should deny Defendants' motion to dismiss based on Plaintiffs' failure to comply with these statutes.

## II.   Response to Proposition IV: Judge Haynes is not entitled to absolute immunity.

Defendants seek to dismiss all claims against Judge Haynes based on the doctrine of judicial immunity, which generally immunizes judges from suits for damages based on actions taken in their judicial capacity.   (Defs.' Mot. 11–13); *Mireles v. Waco*, 502 U.S. 9, 9–10 (1978).   That doctrine, however, is inapplicable here.   As an initial matter, "judicial immunity . . . is not a bar to prospective declaratory . . . relief from Constitutional violations under § 1983."   *Webb v. Okla. Dep't of Human Servs.*, No. CIV-11-134 JHP, 2012 U.S.

---

[10] Defendants notably ignore that, if it applied, 11 O.S. § 27-129(B) would require municipal defendants to pay up to twice the amount of fines to appeal a conviction or sentence, another sum individuals like Plaintiffs would be unable to pay.

Dist. LEXIS 311, at *12 (E.D. Okla. Jan. 3, 2012) (citing *Switzer v. Coan*, 261 F.3d 985, 990 n.9 (10th Cir. 2001)); *see Pueblo of Santa Ana v. Nash*, 854 F. Supp. 2d 1128, 1140 (D.N.M. 2012) ("The Tenth Circuit has continued to recognize that judicial immunity is not a bar to declaratory relief." (citation omitted)).  Plaintiffs state five § 1983 claims seeking prospective declaratory relief against Judge Haynes (Counts I, II, IV, V, and VI). Judge Haynes cannot invoke immunity to avoid these claims.

Further, Plaintiffs seek relief against Judge Haynes for his *administrative* acts, not judicial acts.  Judges are not immune from liability for non-judicial, administrative actions. (*See* Defs.' Mot. 11); *Forrester v. White*, 484 U.S. 219, 229 (1988); *see also Parga v. Bd. of Cty. Comm'rs of Tulsa*, No. 18-CV-0298-CVE-JFJ, 2019 U.S. Dist. LEXIS 42510, at *28–29 (N.D. Okla. Mar. 15, 2019); *Beals v. Jay*, No. CIV-15-922-C, 2017 U.S. Dist. LEXIS 101159, at *6 (W.D. Okla. Apr. 10, 2017).  Whether an action is "judicial" or "administrative" hinges on "the nature of the act itself, i.e., whether it is a function normally performed by a judge, and [] the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity."  *Stump v. Sparkman*, 435 U.S. 349, 362 (1978).  This "is a fact-intensive inquiry" that can "turn on the record as it develops at least through discovery."  *See, e.g.*, *Brown v. Reinhart*, 760 F. App'x 175, 179 (4th Cir. 2019).

Here, Plaintiffs seek relief with respect to Judge Haynes' actions to compel payments from municipal defendants who were unable to pay fines assessed against them. Among other assertions, Plaintiffs variously allege that Judge Haynes:

- Inform[ed] them, before any judicial proceedings began, that he would not grant time payment applications (Am. Compl. ¶¶ 25, 46);

19

- Directed them to call friends and family for money (*id.* at ¶¶ 30, 71);  and

- Relied on a Valley Brook official, Mayor Nieman, to hand out, review, and/or rule on time payment applications for him (*id.* at ¶¶ 47, 51, 67, 72).

These alleged acts "focus more on the administrative task of collecting fines [for the municipality] than the judicial act of imposing them."  *See Kneisser v. McInerney*, No. 1:15-cv-07043-NLH-AMD, 2018 U.S. Dist. LEXIS 55389, at *43 (D.N.J. Mar. 30, 2018) (refusing to grant immunity against municipal judge in similar circumstances); *cf. Parga*, 2019 U.S. Dist. LEXIS 42510, at *28–29 (refusing to grant immunity in case based on district court judge's "administrative, rulemaking, and supervisory authority over the Tulsa County District Court, his promulgation of the secured money-bail schedule, and his promulgation of certain Local Criminal Rules").

Not surprisingly, Judge Haynes admits that his collection activities vary depending on the municipality in which he sits.  (Am. Compl. ¶¶ 111–12).  These allegations show— or at the very least plausibly indicate—that Judge Haynes acted in an administrative capacity when he compelled Plaintiffs to pay municipal fines that they could not afford. At this early stage, dismissal based on immunity is not appropriate.  *Cf. Brown*, 760 F. App'x at 180 (denying summary judgment based on quasi-judicial immunity where Plaintiffs claimed "that Defendants, acting in their *administrative* capacities, oversaw and enforced policies and practices that violated Plaintiffs' constitutional rights," including "exclud[ing] hearings to determine people's ability to pay fees and fines").

## III.   Response to Proposition V: Plaintiffs have stated plausible excessive fines claims.

The Eighth Amendment to the United States Constitution prohibits the imposition

of "excessive fines."  U.S. CONST. amend. VIII.  This prohibition "limits the government's power to extract payments, whether in cash or in kind, 'as punishment for some offense.'" *United States v. Bajakajian*, 524 U.S. 321, 328 (1998) (quoting *Austin v. United States*, 509 U.S. 602, 609–10 (1993)); *see also Timbs v. Indiana*, 139 S. Ct. 682, 687 (2018) (holding that the Excessive Fines Clause applies to state and local entities through the Fourteenth Amendment).  Courts consider two questions when analyzing excessive fines claims: (1) whether the government has imposed a fine; and (2) whether the fine is excessive.  *See Austin*, 509 U.S. at 619, 622; *see also Wright v. Riveland*, 219 F.3d 905, 915 (9th Cir. 2000); *United States v. Valencia*, No. CR 12-3182 JB, 2015 U.S. Dist. LEXIS 175087, at *146–160 (D.N.M. Dec. 31, 2015).  A fine is "excessive" when it is "grossly disproportional to the gravity of a defendant's offense."  *Bajakajian*, 524 U.S. at 334.

Defendants argue that Plaintiffs have failed to state an excessive fines claim solely because Plaintiffs did not identify the precise amount of the fines assessed.  (*See* Defs.' Mot. 13–14.)   Defendants do not identify any case law to support this argument. Regardless, Defendants are wrong.  Plaintiffs' allegations are specific enough to enable Defendants to craft a responsive pleading in response to the excessive fines claim.  *See McDowell-Jacobs v. Huebner*, No. 06-2269-KHV-GLR, 2006 U.S. Dist. LEXIS 65072, at *9 (D. Kan. Sept. 12, 2006) (finding that pleadings satisfy Federal Rule of Civil Procedure 8 when they are "sufficiently specific to enable a responsive pleading[.]").

For instance, each Plaintiff alleges that he or she was required to pay hundreds or thousands of dollars in fines to Valley Brook as a result of traffic or other minor municipal offenses.  These sums include arbitrarily assessed amounts for release from prison, fines

for their offenses, and an assortment of other fines, fees, and costs, including without limitation pay-for-stay costs, fines for "failure to obey/time pay" (which, notably, was never granted), and/or "warrant" fines. (Am. Compl. ¶¶ 20, 28, 36, 41, 48, 53, 55, 62, 70); *cf. United States v. Nacchio*, 573 F.3d 1062, 1090 n.28 (10th Cir. 2009) (recognizing that fine amounts can be aggregated for Eighth Amendment purposes). Plaintiffs also do allege specific amounts for some fines assessed, including Ms. Hill's "failure to obey time pay" and "warrant" fines, and Mr. Garnett's current outstanding fines.[11] (Am. Compl. ¶¶ 36, 55.) Mr. Garnett further alleges that he was put on probation (likely for a fee) and all Plaintiffs allege that fines are assessed arbitrarily, without reference to applicable statutes. (*See, e.g.*, *id.* at ¶¶ 7, 10, 62, 105, 108.) These allegations are entirely sufficient to give rise to an excessive fines claim. *See, e.g.*, *Wheelahan v. City of New Orleans*, No. 19-11720, 2020 U.S. Dist. LEXIS 54571, at *27–30 (E.D. La. Mar. 30, 2020) (denying motion to dismiss excessive fines claim where the plaintiff "alleged that the size of the fine suggest[ed] at least some element of deterrence or retribution . . . [even though] the [c]ourt [could not yet] determine what fines were imposed on [p]laintiff").

Further, it is likely that Defendants already know the amounts and types of fines they assessed against Plaintiffs (and certainly have access to this information). While Plaintiffs know that they were ordered to pay hundreds or thousands of dollars in fines,

---

[11] Plaintiffs further plead that each Plaintiff received $100 per day in jail toward his or her total fines. (*See* Am. Compl. ¶¶ 23–24, 33, 48, 69, 97.) The equivalent of ten days in jail, the time Ms. Hill and Mr. Garnett each spent in jail, would be $1,000 toward each of his or her total municipal fees. (*Id.* at ¶¶ 17, 23–24, 33, 43–44, 48, 52.) Because they still owe outstanding fees, their total was *at least* over $1,500 for minor municipal offenses.

pay-for-stay costs, and other ambiguous fines, no Plaintiff ever received a breakdown or record of the fines assessed.  (*See, e.g.*, Am. Compl. ¶¶ 20, 28, 36, 41, 48, 56, 62, 69.)  In these circumstances, Plaintiffs cannot be expected to plead specific amounts.  *See, e.g.*, *Centeno v. Facilities Consulting Grp.*, No. 3:14-CV-3696-G, 2015 U.S. Dist. LEXIS 6362, at *28–29 (N.D. Tex. Jan. 20, 2015) ("[C]ourts can consider the plaintiffs' ability to access information when determining if a plaintiff has sufficiently pleaded [necessary] elements[.]"); *cf. Venta, Inc. v. Frontier Oil & Ref. Co.*, 827 F. Supp. 1526, 1530 (D. Colo. 1993) ("Pleading on information and belief is to be liberally allowed in antitrust cases where proof of a conspiracy is often in the hands of the alleged conspirators.").  Thus, Defendants' motion to dismiss Plaintiffs' excessive fines claim must be denied.

## IV.     Response to Proposition VI: Plaintiffs can seek to certify a class action in federal court.

In "Proposition VI," Defendants appear to challenge Plaintiffs' intention to proceed with this case as a class action or to oppose, prematurely, a motion for class certification, which Plaintiffs—obviously—have not yet filed.  (*See* Defs.' Mot. 14–15.)  These are not appropriate grounds for dismissal under Rule 12: "Consideration of whether plaintiff's class action allegations are sufficient under Rule 23 . . . is not appropriate at the motion to dismiss stage."  *Marso v. Safespeed*, No. 19-2671-KHV, 2020 U.S. Dist. LEXIS 138042, at *40 (D. Kan. Aug. 4, 2020) (citation omitted).  Even if they were, Defendants have not challenged the sufficiency of any of Plaintiffs' class allegations.

In any event, federal courts regularly entertain removed class actions that were pleaded under state procedural rules in state court before removal.  *See, e.g.*, *Tucker v. BP*

*Am. Prod. Co.*, 278 F.R.D. 646, 649 (W.D. Okla. 2011); *cf. Zuckman v. Monster Bev. Corp.*, 958 F. Supp. 2d 293, 305 (D.D.C. 2013) (finding, in the Class Action Fairness Act context, that "what matters for purposes of jurisdiction, is whether this was 'an action filed under rule 23' or a state equivalent."); *Maldonado v. Town of Valley Brook*, No. CJ-2011-89, 2012 Okla. Dist. LEXIS 5840, at *3 (Okla. Dist. Ct. Sept. 6, 2012) (identifying the Oklahoma class certification provision as "substantially identical" to Federal Rule of Civil Procedure 23).  If Defendants had their way, removing a class action from state court to federal court would be a complete defense to class-wide relief every time.

Even if Defendants' argument was correct, the appropriate course of action would be amendment, not dismissal.  Federal Rule of Civil Procedure 15(a) allows plaintiffs to amend their complaint once as a matter of right.  FED. R. CIV. P. 15.  Plaintiffs could readily amend the complaint to restate their class action intentions under federal procedural rules.  But that is not necessary.  Rather, the Court should simply deny Defendants' motion to dismiss based on the arguments raised in Proposition VI.

## V.   Response to Proposition VII: Plaintiffs have named proper defendants.

Finally, Defendants contend that the Valley Brook Municipal Court and the Valley Brook Police Department are not proper defendants.  (*See* Defs.' Mot. 15.)  Significantly, Defendants do not explain or cite any cases explaining why Oklahoma municipal courts are not "juridical entities capable of being sued."  (*Id.*)  Meanwhile, courts in other circuits have indicated that whether a municipal court is capable of being sued (at least under § 1983) turns on "whether the municipal court is an arm of the state entitled to sovereign immunity," *see, e.g.*, *Ward v. City of Norwalk*, 640 F. App'x 462, 465 (6th Cir. 2016),

which the Valley Brook Municipal Court is not, *cf Kneisser*, 2018 U.S. Dist. LEXIS 55389, at *25–40 (allowing § 1983 claims to proceed against municipal court); 11 O.S. §§ 27-101, *et seq.* (provisions governing municipal courts not of record).   Accordingly, the Valley Brook Municipal Court is a proper defendant.

Plaintiffs acknowledge, however, that courts in this District have ruled that "governmental sub-units," including municipal police departments, "are [generally] not separate suable entities that may be sued."  *See, e.g.*, *Estes v. Poffel*, No. CIV 14-141-RAW-SPS, 2014 U.S. Dist. LEXIS 56830, at *3 (E.D. Okla. Apr. 22, 2014); *Lenz v. Town of Carney*, No. CIV-13-1026-C, 2014 U.S. Dist. LEXIS 12650, at *9–10 (W.D. Okla. Feb. 3, 2014).  Defendants also concede, however, that in these circumstances, the governmental entity (here, co-Defendant Town of Valley Brook) can be sued.  Thus, to the extent that the concession that the Valley Brook Police Department's misconduct is attributable to the Town of Valley Brook, and Valley Brook is properly situated to redress harms caused by the Police Department, Plaintiffs would agree to dismiss their claims against the Police Department without prejudice, subject to further confirmation throughout discovery.[12]

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' Motion to Dismiss.

---

[12] To the extent the Valley Brook Municipal Court also qualifies as a "governmental sub-unit," this point applies with equal force to the Valley Brook Municipal Court.

Dated:  March 18, 2021

s/ Woodrow K. Glass
Woodrow K. Glass (OBA #15690)
Ward & Glass
1601 36th Ave NW
Norman, OK 73072
405.253.4031 DIRECT
405.360.7902 FAX
woody@wardglasslaw.com

Arthur Ago
Tianna Mays
Lawyers' Committee for Civil Rights
Under Law
1500 K Street NW, Suite 900
Washington, DC 20005
202-662-8600 DIRECT
202-783-0857 FAX
aago@lawyerscommittee.org
tmays@lawyerscommittee.org
*Pro hac vice motions forthcoming*

Jason A. Leckerman
Lisa Swaminathan
Laura E. Luisi Gavin
Izabella Babchinetskaya
Ballard Spahr LLP
1735 Market St. 51st Floor,
Philadelphia, PA 19103
215.864.8266 DIRECT
215.864.8999 FAX
LeckermanJ@ballardspahr.com
SwaminathanL@ballardspahr.com
GavinL@ballardspahr.com
BabchinetskayaI@ballardspahr.com
*Pro hac vice motions forthcoming*

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 18, 2021, a true and correct copy of the foregoing

Response in Opposition to Defendants' Motion to Dismiss was served upon all parties of

record via the Court's CM/ECF system.

s/Woodrow K. Glass
Woodrow K. Glass
