## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| KIMIESHA HILL, JASON GARNETT, and KIARA McCORKLE, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. CIV-21-00097-PRW |
| TOWN OF VALLEY BROOK, VALLEY BROOK MUNICIPAL COURT, LEWIS NIEMAN, Mayor of Valley Brook in his official capacity, STEPHEN HAYNES, Municipal Judge, individually and in his official capacity, MICHAEL STAMP, Chief of Valley Brook Police Department, in his official capacity, and VALLEY BROOK POLICE DEPARTMENT, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Defendants' Motion to Dismiss (Dkt. 7), Plaintiffs' Response in

Opposition (Dkt. 8), and Defendants' Reply (Dkt. 15). For the reasons below, the Motion

to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

### *Background*[1]

The Town of Valley Brook is a small municipality situated within the Oklahoma

City metropolitan area. In 2020, the three Plaintiffs—Kimiesha Hill, Jason Garnett, and

Kiara McCorkle—were stopped by Valley Brook police officers for minor traffic offenses.

---

[1] At this stage the Court accepts the Plaintiffs' well-pleaded allegations as true, so the account presented in this factual background reflects Plaintiffs' account.

Case 5:21-cv-00097-PRW   Document 29   Filed 03/31/22   Page 2 of 17


Additionally, the officers searched Ms. Hill and Ms. McCorkle's vehicles despite lacking consent or probable cause. Following the stop and search, the officers took each Plaintiff to the Valley Brook police station, where they demanded immediate payment of hundreds or thousands of dollars in fines. The officers did not explain to any of the Plaintiffs what the fines were for or provide a breakdown of the costs. After determining that Plaintiffs could not immediately pay these fines, Plaintiffs were placed in Valley Brook's prison cell and instructed to call family, friends, or bail bondsmen to raise the money necessary to cover the fines. When this failed, the Valley Brook officers booked each Plaintiff into the Oklahoma County jail. At no point were any of the Plaintiffs advised of their right to counsel, offered counsel, or appointed counsel. Ms. McCorkle remained in jail for four day, Ms. Hill for five days, and Mr. Garnett for one week.

After waiting in the county jail for up to a week, Plaintiffs appeared before Municipal Judge Stephen Haynes. Judge Haynes informed the Plaintiffs that if they pleaded guilty or no contest to the traffic offenses, they would be required to immediately pay all fines in full or else would be sent back to jail. And while a "time payment application" requesting a periodic payment schedule for indigency existed, Judge Haynes preemptively told Plaintiffs that he would deny all such applications. Plaintiffs were still not advised of their right to counsel or appointed counsel. Each Plaintiff pleaded guilty or no contest to the municipal traffic offenses and Judge Haynes ordered each Plaintiff to pay hundreds or thousands of dollars of fines in full. When they could not pay immediately, Judge Haynes ordered each Plaintiff be detained and ordered them to again call family and friends to raise

money. At no point did Judge Haynes conduct a financial indigency hearing[2] or consider

the time payment applications submitted by Ms. Hill and Mr. Garnett. Each Plaintiff was

again jailed—Ms. McCorkle for twelve hours, Ms. Hill for four days, and Mr. Garnett for

five days. Both Ms. McCorkle and Ms. Hill lost their jobs while imprisoned. Ms. McCorkle

ultimately borrowed money from family to pay her fines and gain release, while Ms. Hill

and Mr. Garnett were released after spending enough time in jail that a "daily credit"

canceled out their fines. However, months later, each Plaintiff received notices that they

still owe hundreds of dollars of fines.

Plaintiffs sued Defendants in Oklahoma County District Court, raising seven

separate claims: (1) imprisonment for failure to pay a fine, in violation of the Fourteenth

Amendment, (2) failure to provide an opportunity to be heard prior to detention, in

violation of the Fourteenth Amendment, (3) denial of due process, in violation of Article 2

of the Oklahoma Constitution, (4) indefinite incarceration without a hearing, in violation

of the Fourteenth Amendment, (5) excessive and arbitrary fines, in violation of the Eighth

Amendment, (6) imprisonment without providing right to counsel or receiving a knowing

and voluntary waiver of counsel, in violation of the Sixth Amendment, and (7)

unreasonable searches, in violation of the Fourth Amendment. Plaintiffs proposed to certify

---

[2] Title 22, § 983(A) of the Oklahoma Statutes authorizes imprisonment for nonpayment of fines "after notice and hearing that the defendant is financially able but refuses or neglects to pay the fine." The procedure for this hearing is established by Rule 8.1 of the Rules of the Court of Criminal Appeals, which states "[w]hen the Judgment and Sentence of a court, either in whole or in part, imposes a fine and/or costs upon a defendant, a judicial hearing shall be conducted and judicial determination made as to the defendant's ability to immediately satisfy the fine and costs."

four separate classes for potential class action and sought declaratory relief, injunctive relief, damages for injuries suffered, vacatur of outstanding fines, and attorney's fees.

Invoking federal-question jurisdiction and supplemental jurisdiction, Defendants removed the case to this Court. Now, pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendants seek to dismiss the action in its entirety.

### *Legal Standard*

When reviewing a Rule 12(b)(6) motion to dismiss, all well-pleaded allegations in the complaint must be accepted as true and viewed "in the light most favorable to the plaintiff."[3] While a complaint need not recite "detailed factual allegations," "a plaintiff's obligation to provide the grounds of [her] entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[4] The pleaded facts must thus be sufficient to establish that the claim is plausible.[5] In considering whether a plausible claim has been made, the Court must "liberally construe the pleadings and make all reasonable inferences in favor of the non-moving party."[6] However, when considering a Rule 12(b)(6) motion to dismiss, the Court also examines whether the claim fails as a matter of law despite sufficiently detailed factual allegations. Thus, the Court "may grant judgment as a matter of law under Federal Rule of Civil

---

[3] *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *David v. City & County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996)).

[4] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted) (alteration in original).

[5] *See id.*

[6] *Brokers' Choice of Am., Inc. v. NBC Univ., Inc.*, 861 F3d 1081, 1105 (10th Cir. 2017).

Procedure 12(b)(6) on the basis of an affirmative defense . . . when the law compels that result."[7]

While Rule12(b)(6) motions challenge the legal sufficiency of a claim, Rule 12(b)(1) motions challenge whether the Court even has jurisdiction over the action. Rule 12(b)(1) motions generally take one of two forms, either "a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction," or "a challenge to the actual facts upon which subject matter jurisdiction is based."[8] The legal test applied depends on which type of challenge the movant asserts. When the 12(b)(1) challenge is a facial attack, the Court confines itself to review of the complaint and accepts all allegations as true— much like 12(b)(6) review.[9] When the (12)(b)(1) challenge is a factual attack, the Court must "resolve [the] disputed facts" and has "wide discretion to allow affidavits, other documents, [or] a limited evidentiary hearing" to do so.[10]

### *Discussion*

Relying primarily on an assortment of abstention and immunity doctrines, Defendants advance eight arguments in support of their motion to dismiss. The Court addresses each in turn.

---

[7] *Caplinger v. Medtronic, Inc.*, 784 F.3d 1335, 1341 (10th Cir. 2015).

[8] *Ruiz v. McDonell*, 299 F.3d 1173, 1180 (10th Cir. 2002) (citing *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995)).

[9] *See United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001); *Holt*, 46 F.3d at 1002.

[10] *Holt*, 46 F.3d at 1003; *see also Paper, Allied-Indus., Chem. & Energy Workers Int'l Union v. Cont'l Carbon Co.*, 428 F.3d 1285, 1292–93 (10th Cir. 2005).

*I.*      Rooker-Feldman *Doctrine.*

Defendants first argues that Ms. McCorkle and Mr. Garnett are barred from seeking

redress in federal court by the *Rooker-Feldman* doctrine. Setting aside the impropriety of

permitting Defendants to remove a case to federal court and then dismiss the case for the

federal court being the wrong venue, *Rooker-Feldman* does not bar this Court's exercise

of jurisdiction since Plaintiffs' claims and relief do not challenge or affect the validity of

the underlying traffic violation judgments.

The *Rooker-Feldman* doctrine precludes "cases brought by state-court losers

complaining of injuries caused by state-court judgments rendered before the district court

proceedings commenced and inviting district court review and rejection of those

judgments."[11] Thus, the *Rooker-Feldman* doctrine prevents "a party losing in state court

. . . from seeking what in substance would be appellate review of [a] state judgment in a

United States district court, based on the losing party's claim that the state judgment itself

violates the loser's federal rights."[12] This extends to both "claims actually decided by a

state court, and claims inextricably intertwined with a prior state-court judgment."[13]

However, notably exempted are "challenge[s to] state procedures for enforcement of a

judgment, where consideration of the underlying state-court decision is not required."[14]

---

[11] *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005).

[12] *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994).

[13] *Kenmen Engineering v. City of Union*, 314 F.3d 468, 473 (10th Cir. 2002) (generally explaining the *Rooker-Feldman* doctrine), *overruled on other grounds by Exxon*, 544 U.S. 280.

[14] *Kenmen*, 314 F.3d at 476 (discussing the Supreme Court's decision in *Pennzoil Co. v. Texaco, Inc.* that permitted a challenge to an enforcement procedure to proceed); *see also*

Here, Defendants argue that Ms. McCorkle and Mr. Garnett seek to effectively

review and invalidate the state court judgments from the Valley Brook municipal court.

However, a closer examination of the pleadings reveals that the Plaintiffs do not contest

their guilt or challenge the validity of the municipal traffic convictions. Plaintiffs challenge

various alleged unconstitutional actions—such as unreasonable searches unrelated to the

offense of conviction—that have no bearing on the validity of the state's traffic violation

judgments and seek injunctive relief to stop Defendants from continuing such

constitutional violations. And Plaintiffs challenge various alleged unconstitutional

actions—such as imprisonment without due process for failure to pay the fines associated

with the state's traffic violation judgments—that address the state court's post-judgment

collection procedures, rather than the state judgment itself. Even with "[v]acatur of all

outstanding fines," if Plaintiffs' pleadings are favorably construed, they are challenging

not the fines assessed by the state court, but rather the arbitrary fines Valley Brook assessed

against Plaintiffs post-hoc despite having previously informed Plaintiffs that all fines had

been paid or excused.

The *Rooker-Feldman* doctrine is a "narrow ground" confined to cases where state-

court losers are both complaining of injuries caused by a state-court judgement *and*

---

*Kiowa Indian Tribe v. Hoover*, 150 F.3d 1163, 1170 (10th Cir. 1998) ("[A]sking a federal court to enjoin post-judgment collection procedures that allegedly violate a party's federal rights is distinguishable from asking a federal court to review the merits of the underlying judgment.").

"inviting district court review and rejection of those judgments."[15] The doctrine does not

bar cases where the state-court judgment is correct but the enforcement mechanism may

be unconstitutional.[16] Construing the pleadings in favor of the Plaintiffs and making all

reasonable inferences in their favor, Plaintiffs have not presented any claims or requested

any relief that would necessitate setting aside the validity of Valley Brook's municipal

traffic convictions and judgment. Accordingly, at this stage of the pleadings, the Court

cannot conclude that the *Rooker-Feldman* doctrine bars the claims of Ms. McCorkle or Mr.

Garnett.[17]

## II.    Younger *Abstention Doctrine.*

Defendants next argue that Ms. Hill's claims are barred by the *Younger* abstention

doctrine. Under the Younger abstention doctrine, federal courts are to abstain from

exercising jurisdiction that would interfere with state proceedings when: (1) there is an

---

[15] *Brown v. Chappelle*, 659 F. App'x 458, n.1 (10th Cir. 2016) (quoting *Exxon*, 544 U.S. at 284).

[16] *See Market v. Garden City*, 723 F. App'x 571, 574 (10th Cir. 2017) (distinguishing between cases where "the state-court judgment could be correct and the enforcement mechanism could still be unconstitutional" and cases where, in order for the federal plaintiff to win, "the municipal court's judgment had to be wrong.").

[17] In so finding, the Court joins other federal courts in recognizing the challenges to the processes employed to collect or enforce judgments are separate, for *Rooker-Feldman* purposes, than challenges to the validity of the underlying judgment. *See, e.g.*, *Cain v. New Orleans*, 186 F. Supp. 3d 536, 553 (E.D. La. 2016) (finding challenges to the enforcement of judgments against indigent defendants "an issue separate and distinct from the validity of the judgment itself" since this does not require courts to "review, modify, or nullify, a final order of a state court"); *see also Kiowa Indian Tribe*, 150 F.3d at 1170 ("[A]sking a federal court to enjoin post-judgment collection procedures that allegedly violate a party's federal rights is distinguishable from asking a federal court to review the merits of the underlying judgment."); *Market*, 723 F. App'x at 574 (favorably citing *Cain*).

ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests.[18]

But for *Younger* abstention to apply, all three requirements must be satisfied. As to the first requirement, Defendants assert that Ms. Hill's case is an "ongoing proceeding" since she has been charged outstanding fines and admitted she may have another court date. Yet no ongoing criminal prosecution remains, since Ms. Hill has been convicted and sentenced. As discussed above, Ms. Hill is not challenging the traffic violation conviction. Instead, she filed a post-conviction civil action that "seeks a remedy for some other state-inflicted wrong," bringing this case closer to the category of remedial proceedings that falls outside *Younger* abstention territory.[19] As noted by another district court within this circuit, the argument that "a criminal proceeding is 'ongoing' for the entire duration of a convict's sentence" is unsupported by authority and requires an unnatural construction of the word ongoing.[20]

Furthermore, Defendants may not now argue that this case should proceed in an "adequate state forum" after Defendants themselves removed the case to this Court. Permitting a defendant to remove cases from state court then immediately invoke the

---

[18] *See Kirk v. Oklahoma*, 2021 WL 1881039, at *2 (March 22, 2021) (quoting *Winn v. Cook*, 945 F.3d 1253, 1258 (10th Cir. 2019)).

[19] *Brown ex rel. Brown v. Day*, 555 F.3d 882, 889 (10th Cir. 2009).

[20] *Bertrand v. Kopcow*, 199 F. Supp. 3d 1278, 1282 (D. Colo. 2016); *see also Cain*, 186 F. Supp. 3d at 549–50 ("an incomplete sentence, such as an undischarged term of imprisonment, probation, or parole, does not constitute an 'ongoing state judicial proceeding' for purposes of Younger abstention").

*Younger* abstention doctrine to obtain dismissal would leave plaintiffs without any forum to pursue federal claims. Many other courts have found that "*Younger* cannot apply in the context of removal."[21] The Court finds these cases to be persuasive, and therefore finds that the *Younger* abstention doctrine does not bar Ms. Hill's claims at this stage.

III.     *The Oklahoma Uniform Post-Conviction Procedure Act.*

Defendants next argue that Plaintiffs' claims must be dismissed since Plaintiffs did not avail themselves of the Oklahoma Uniform Post-Conviction Procedure Act ("OUPCPA"). The OUPCPA provides state-court defendants an avenue where they "may institute a proceeding under this act in the court in which the judgment and sentence on conviction was imposed to secure the appropriate relief."[22]

Defendants claim that Plaintiffs' failure to seek relief under the OUPCPA is "fatal" to their claims. However, Defendants cite no authority for this proposition. To be sure, exhaustion of remedies under the OUPCPA is a normal step in federal habeas proceedings. But the OUCPA "applies only to challenges to the original conviction and imposition of sentence."[23] As discussed above, drawing inferences in favor of the Plaintiffs at this stage leads to the clear conclusion that Plaintiffs are challenging not the traffic violation convictions but the various alleged constitutional violations associated with the subsequent

---

[21] *See Zeeco, Inc. v. JPMorgan Chase Bank*, 2017 WL 6539504, at *3 (N.D. Okla. Dec. 21, 2017) (collecting cases); *see also Berry v. Wells Fargo Bank*, 2022 WL 728969, at *3 (5th Cir. March 10, 2022); *Village of DePue v. Exxon Mobil Corp.*, 537 F.3d 775, 783 (7th Cir. 2008).

[22] Okla. Stat. tit. 22, § 1080.

[23] *Daniels v. State*, 2017 Okla. Crim. App. LEXIS 28, at *3 (Okla. Crim. App. 2017) (quoting *Mahler v. State*, 783 P.2d 973, 974 (Okla. Crim. App. 1989)).

imprisonment for failure to pay and other alleged procedural violations. Oklahoma courts have made clear that claims of constitutional violations unrelated to the actual conviction are "collateral matters not properly brought under the purview of post-conviction."[24] Accordingly, the Court finds no fatal flaw in Plaintiffs' failure to seek relief under the OUCPCA such that their claims should be dismissed now.

IV.     *Application of* Heck v. Humphrey.

In the next attempt to defeat jurisdiction, Defendants argue that Plaintiffs' claims are barred by the Supreme Court's holding from *Heck v. Humphrey*.[25] In *Heck*, the Supreme Court considered "whether a state prisoner may challenge the constitutionality of his conviction in a suit for damages" and held that if "judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," the complaint must be dismissed "unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."[26] Defendants argue that Plaintiffs are therefore foreclosed from seeking damages since their convictions have not been invalidated.

However, this misapprehends the role and holding of *Heck*. First, as the Tenth Circuit observed, the ruling in *Heck* dealt with foreclosing § 1983 relief from prisoners who could obtain habeas relief.[27] Therefore, a plaintiff who "has no available remedy in

---

[24] *Hatch v. State*, 924 P.2d 284, 294 (Okla. Crim. App. 1996), *certiorari denied*, 518 U.S. 1042; *see also Moore v. State*, 889 P.2d 1253 (1995); *Nguyen v. State*, 879 P.2d 148 (1994).

[25] 512 U.S. 477 (1994).

[26] *Id.* at 478, 487.

[27] *Cohen v. Longshore*, 621 F.3d 1311, 1317 (10th Cir. 2010).

11

habeas, through no lack of diligence on his part, is not barred by *Heck* from pursuing a § 1983 claim."[28] Furthermore, as *Heck* itself observes, its proscription bars only cases where the plaintiff's action, if successful, would undermine the factual findings supporting the conviction. Where "the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed."[29] Here, since Plaintiffs' have no available remedy in habeas—despite their allegations of illegal imprisonment—as they have now been released. Since their action, if successful, will not undermine the validity of their traffic violation convictions, the *Heck* rule does not bar their claims as a matter of law.

## V.   *Judicial Immunity*

Defendant Municipal Judge Stephen Haynes—who was sued in both his official and individual capacity—seeks full dismissal from the action and invokes the doctrine judicial immunity. It is true that judges are absolutely immune from liability for damages "for acts

---

[28] *Id.* In *McFadden v. City of Midwest City*, Judge Joe Heaton considered similar claims and the relevant *Heck* precedents and concluded that, while the specific issue remains unanswered by the Tenth Circuit, the action should be dismissed since the plaintiff had available state remedies but did not exhaust them. The Court finds this case distinguishable, as here, Plaintiffs attempted to pursue state remedies, but Defendants removed to this Court.

[29] *Heck*, 512 U.S. at 487 (emphasis in original). The Supreme Court followed this observation with an example: a § 1983 suit for damages is not barred under *Heck* where the government conducted an unreasonable search in violation of the Fourth Amendment, but the fruits of that search did not supply the basis for the plaintiff's conviction. Therefore, the plaintiff could be successful and recover damages without undermining the validity of the conviction. *See id.* at 487 n.7.

committed within their judicial jurisdiction."[30] However, there are two important

exceptions applicable to the instant case. First, judicial immunity does not bar declaratory

relief.[31] Second, even though judicial immunity generally bars all suits for damages or

injunctive relief, it does not bar suits challenging actions taken outside the judge's judicial

capacity.[32]

As applied to this case, the Plaintiffs' complaint states several claims seeking

declaratory relief against Judge Haynes, and judicial immunity cannot bar these declaratory

relief claims from proceeding. Whether the other claims—those seeking damages and

injunctive relief—may proceed is a closer call, which turns on whether Judge Haynes was

behaving in a "judicial" capacity or an "administrative" capacity. For this determination,

the Court must look to "the nature of the act itself," "whether it is a function normally

performed by a judge, and to the expectations of the parties," and "whether they dealt with

the judge in his judicial capacity."[33] Plaintiffs focus on three of the actions allegedly taken

by Judge Haynes: (1) informing the state-court defendants that he would not grant time

payment applications, (2) directing them to call friends and family for money, and

---

[30] *Mehdipour v. Purcell*, 173 F. Supp. 2d, 1165, 1166 (W.D. Okla. 2001) (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967)).

[31] *See Lawrence v. Kuenhold*, 271 F. App'x 763, 765–66 (10th Cir. 2008) (citing *Schepp v. Fremont County*, 900 F.2d 1448, 1452 (10th Cir. 1990)). While the Tenth Circuit noted in *Lawrence* that claims seeking declaratory relief against judges must be in anticipation of some future conduct and not merely to proclaim liability for a past act, this distinction is satisfied by Plaintiffs' attempt to certify a class against Defendants and Judge Haynes.

[32] *See Stump v. Sparkman*, 435 U.S. 349, 361–62 (1978).

[33] *Id.* at 362.

(3) relying on the Valley Brook mayor to distribute, collect, and "potentially rule" on the time payment applications for him.

None of these actions abrogate Judge Haynes' judicial immunity. First, since state law vests authority to make ability-to-pay decisions with state judges, any erroneous denial and any statements relating to a future erroneous denial were still actions taken within Judge Haynes' judicial capacity. Second, even if ordering the state-court defendants to call friends and family for money might have been outside Judge Haynes' judicial capacity, such an action by itself is not a constitutional violation and is not directly linked to any of the constitutional violations alleged by Plaintiffs. Third, the Complaint contains no pleading that indicate Judge Haynes may have outsourced ruling on the time payment applications to the Valley Brook mayor. Even had he done so, this would be an error of his authority to make such rulings and so still a decision made within his judicial capacity. The remaining actions—distribution and collection of the time payment applications by the Valley Brook mayor—appear to be administrative actions taken by an administrative official, and so not within the purview of Judge Haynes' own behavior.

Accordingly, the doctrine of judicial immunity immunizes Judge Haynes from the portions of Plaintiffs' claims seeking damages and injunctive relief, but not the portions of Plaintiffs' claims seeking declaratory relief.

VI.    *Excessive Fines*.

Defendants next claim that Plaintiffs failed to state a claim with respect to their claim of excessive fines in violation of the Eighth Amendment. The touchstone for an excessive fines claim is "the principle of proportionality," since the amount of a fine "must

14

bear some relationship to the gravity of the offense that it is designed to punish."[34] Defendants assert that since Plaintiffs did not plead a specific dollar amount as to what fines were assessed, they failed to satisfy the minimum standards for pleading excessive fines.

However, throughout the Complaint, Plaintiffs repeatedly alleged that they were subjected to fines from "several hundred dollars" to "several thousand dollars." While this alone would satisfy the minimum pleading standards, the Complaint also repeatedly alleges that Plaintiffs were never given a record, breakdown, or explanation of the fines assessed against them before they were reimprisoned. Thus, the only record of the exact value of the fines assessed against each Plaintiff is held by Defendants. The Court will not fault Plaintiffs for not pleading exact dollar amounts while Defendants hold all the records and before discovery has been conducted.

## VII.   *Class Certification.*

Defendants next challenge Plaintiffs' anticipated future motion for class certification, asserting only that in the Complaint Plaintiffs sought to certify a class pursuant to state law rather than the required federal procedure outlined by Rule 23 of the Federal Rules of Civil Procedure. Setting aside that the Oklahoma state rule and Rule 23 of the federal rules are "substantially identical,"[35] Defendants appear to have forgotten that they were the ones who removed this case to federal court. Plaintiffs will not be faulted for

---

[34] *United States v. Bajakajian*, 524 U.S. 321, 334 (1998).

[35] *Maldonado v. Town of Valley Brook*, 2012 Okla. Dist. Lexis 5840, at \*3 (Okla. Dist. Ct. Sept. 6, 2012).

proposing potential future class certification under state rules in a complaint filed in state court. And Plaintiffs remain free to submit any future motion to certify a class according to Rule 23 of the federal rules since the case is now before this Court.

*VIII.   Municipal Entities.*

Finally, Defendants argue that neither of the sub-municipal entities named—Valley Brook Municipal Court and Valley Brook Police Department—are capable of being sued under § 1983. While it is true that a municipal entity is not generally a suable entity because it lacks a legal identity apart from the municipality,[36] any defected is remedied by simply naming the municipality as well.[37] Here, since the two sub-municipal entities are both divisions of the Town of Valley Brook, all alleged conduct may therefore be attributed to the Town of Valley Brook. And since the Town of Valley Brook is a named defendant, the Court finds it appropriate to dismiss Valley Brook Municipal Court and Valley Brook Police Department from the case.

*Conclusion*

Considering the current stage of proceedings, where the Court liberally construes the well-pleaded allegations and makes all reasonable inferences in favor of the Plaintiffs, it would be inappropriate to dismiss the bulk of Plaintiffs' claims. Accordingly,

---

[36] *See Ketchum v. Albuquerque Police Dept.*, 1992 WL 51481, at *2 (10th Cir. Mar. 12, 1992) (holding a municipal police department is not a suable entity because it lacks a legal identity apart from the municipality or county)

[37] *See Shangreaux v. Midwest City Police Dept.*, 936 F.2d 583 (Table), at *2 (10th Cir. 1991) ("The police department of Midwest City is not a suable entity. Of course, to remedy this defect, Shangreaux needs only to amend his complaint to name Midwest City as a defendant.").

Defendants' Motion to Dismiss (Dkt. 7) is **GRANTED IN PART** and **DENIED IN PART**. Defendants Valley Brook Municipal Court and Valley Brook Police Department are **DISMISSED** from the action and all claims seeking damages or injunctive relief are **DISMISSED** as to Municipal Judge Stephen Haynes. The claims seeking declaratory judgment against Judge Haynes and all other claims outlined by Plaintiffs may proceed.

      **IT IS SO ORDERED** this 31st day of March 2022.

 

                       _____

                       PATRICK R. WYRICK
                       UNITED STATES DISTRICT JUDGE